450 S.E.2d 635

**Jeffrey W. POLING and Wendy Poling, his Wife, Plaintiffs,**

v.

**MOTORISTS MUTUAL INSURANCE CO., Defendant.**

**No. 22135.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 1994.

Decided Oct. 28, 1994.

David A. Jividen, Bordas, Bordas & Jividen, Wheeling, for plaintiffs.

Charles·D. Bell, J.P. McMullen, Jr., Wellsburg, for defendant.

NEELY, Justice.

This case presents three certified questions from the United States District Court for the Northern District of West Virginia that concern insurance bad faith. Because it appears to the federal court that there is no controlling precedent on these issues, the federal court requests that the following questions be answered:

(1) Whether the settlement of the underlying tort case against the tortfeasor precludes a separate and independent recovery against the tortfeasor's insurer arising out of its alleged bad faith insurance practices when the third-party plaintiff made a voluntary settlement of a disputed personal injury claim and settles the property damage claim for the sum demanded which includes a sum for inconvenience.

(2) Whether West Virginia Code § 33–11–4(9) authorizes the recovery of punitive damages given the situation described in Question 1.

(3) Whether the wife of the plaintiff has a separate cause of action against the tortfeasor's insurer for loss of consortium arising out of the insurer's alleged bad faith insurance practices.

We answer "no" to question one and "yes" to the second and third questions.

## I.

▮ The plaintiff in this case, Jeffrey W. Poling, was driving his pick-up truck on West Virginia State Route 2 when it was hit from the rear by an automobile driven by William M. Bonar, and insured by the defendant, Motorists Mutual Insurance Company. At the time of the accident, Mr. Bonar was drunk and was arrested at the scene for driving under the influence of alcohol. The automobile Mr. Bonar was driving was apparently borrowed from his father without permission or knowledge. Further, Mr. Bonar did not have a valid driver's license at the time of the accident. As a result of the accident, Mr. Poling's pick-up truck was forced off the road where it flipped over and traveled 300 feet down an embankment. Consequently, the Poling vehicle was a total loss.

After the accident, Mr. Poling was transported to Wheeling Hospital where he was treated for neck and back pain, as well as abrasions to his back, ribs and ankle. Mr. Poling's condition required follow-up visits to Dr. Thomas Romano, a rheumatologist and pain management specialist. Dr. Romano diagnosed Mr. Poling as suffering from severe myofascial pain syndrome and prescribed medications and bed rest. The parties disagree on the full extent of Mr. Poling's injuries. Mr. Poling contends that he remained unable to return to work for six months and lost wages for that period. Motorists' expert, on the other hand, contends that Mr. Poling's injuries were not as severe as he claims and that Mr. Poling could have gone back to work soon after the accident. The property damages were, however, never disputed.

Mr. Poling avers that only after twelve months of repeated attempts to resolve the property damage to his pick-up truck and his personal injuries was the matter settled. Shortly before the suit between Mr. Poling and the Bonars was to go to trial, Motorists Mutual agreed to pay Mr. Poling the policy limits of $100,000 for personal injury and $6,300 for property damage. The settlement was made, checks drafted, and a release tendered that contained a release of the tortfeasor and Motorists Mutual. Although Mr. Poling was willing to release the tortfeasor, he refused to release Motorists. Motorists sought to compel settlement, but the circuit judge ruled that there was no meeting of the minds with respect to releasing Motorists. Motorists agreed to pay the agreed settlement despite the fact that it was not included in the release. The plaintiff subsequently brought suit in the United States District Court for the Northern District of West Virginia against Motorists Mutual for bad faith insurance practices.

▮ Motorists Mutual argues that the settlement of the underlying tort claim precludes an unfair claim settlement practices suit against it. In reaching this conclusion, Motorists relies on language in *Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981) stating that a cause of

action must be "ultimately resolved" before a bad faith action can be brought. More specifically, Motorists argues that our holding in *Jenkins* that a cause of action for statutory bad faith under *W.Va.Code*, 33–11–4(9) [1985] accrues when the underlying case is "ultimately resolved," means that there must be underlying litigation that has concluded in a *judicial determination*. Motorists' main contention is that a voluntary settlement is not a judicial determination and thus not an ultimate resolution of the cause of action. We disagree. Although a voluntary settlement is not a judicial determination, it is an ultimate resolution of a cause of action.

■ Nowhere in *Jenkins* did this Court state that "ultimately resolved" means a judgment was obtained rather than a settlement. A settlement is one of many ways in which a case may be ultimately resolved. The important fact of this case is that Mr. Poling did not release Motorists in the settlement. By not releasing Motorists in the settlement and by bringing that fact to Motorists' attention, Mr. Poling reserved his right to bring a bad faith action against Motorists. The insurer, Motorists, was obviously aware of the potential for a bad faith action in this case when it agreed to the settlement because it petitioned the court in the underlying tort case to compel settlement after the plaintiff refused to release it. Therefore, we find that a cause of action for insurance bad faith may arise even if there has been a settlement and release so long as the release does not cover the insurer and the insurer is, or should be, aware of the possibility of a bad faith action at the time it agrees to the settlement.

## II.

■ The second question posed here is whether *W.Va.Code*, 33–11–4(9) [1985] authorizes the recovery of punitive damages. We see no reason why this Court should carve out an exception to punitive damage awards in bad faith cases. Punitive damages are designed to punish and deter malicious and mean-spirited conduct. *TXO Production v. Alliance Resources*, 187 W.Va. 457, 419 S.E.2d 870, 887 (1992). As this Court noted

in *Garnes v. Fleming Landfill Inc.*, 186 W.Va. 656, 413 S.E.2d 897, 903 (1991):

> Another function of punitive damages is to encourage good faith efforts at settlement. Often in lawsuits, there is a disparity of bargaining power between the plaintiff and defendant. In most cases, the defendant has a resource advantage over the plaintiff and is able to draw out a trial into a prolonged blizzard of mindless motions, countless continuances, and dreadful delay.

The mere fact that after months of delay and hassle the insurance company deigns to speak to the injured party and settles the case for the policy limits after realizing that the plaintiff is not going to accept some outlandish low-ball offer, does not automatically preclude the plaintiff from later bringing a bad faith action that includes a request for punitive damages.

Furthermore, there are good policy reasons for permitting a bad faith action that may include a count for punitive damages after an egregiously untimely settlement that go to this Court's efforts to keep insurance premiums within reasonable bounds. As the facts of the case before us indicate, many hours of lawyer time went into incompetently handling this case—a case that ultimately ended in the payment of the full policy limits. Yet everyone knows that *early* settlements are *cheap* settlements. Without the possibility of bad faith claims, hourly billing schemes will encourage lawyers to mine every seam of fool's gold from every possible motion, deposition opportunity, interrogatory exchange, declaratory judgment action, and occasion justifying a petition for extraordinary relief, leaving the policy holders *paying the freight.* Thus, without the possibility of bad faith actions to call the attention of senior company management t the abuses that hourly billing inherently generate, premiums will go through the roof and insurance will become unaffordable to the average person.

For these reasons, we hold that punitive damages are recoverable in insurance bad faith cases despite the fact that there may have been a settlement of the underlying tort action. With that said, the plaintiff in this case must still show that punitive damages are appropriate in this particular case. That

is, the plaintiff must show that Motorists knew Mr. Poling's claim was proper and willfully, maliciously, and intentionally delayed payment in order to attempt to obtain a less than just settlement. *Berry v. Nationwide Mut. Fire Ins. Co.*, 181 W.Va. 168, 381 S.E.2d 367 (1989).

### III.

 The final question is whether the wife of a plaintiff in an insurance bad faith case may recover damages for loss of consortium. Consortium is a right, arising from the marital union, to have performance by a spouse of all the duties and obligations assumed by the marriage relationship, including the right to society, companionship and services. *King v. Bittinger*, 160 W.Va. 129, 231 S.E.2d 239 (1976). At common law "consortium" was defined as consisting of (1) services, (2) society and (3) sexual relations, and the husband was entitled to recover damages from a tortfeasor when one or more of these elements of the relationship with his wife were lost or impaired due to an injury to her. *Belcher v. Goins*, 184 W.Va. 395, 400 S.E.2d 830 (1990). *W.Va.Code*, 48–3–19a [1969] states that "[a] married woman may sue and recover for loss of consortium to the same extent and in all cases as a married man." Therefore, either spouse may be entitled to consortium damages if the other is injured by a tortfeasor.

Violation of *W.Va.Code*, 33–11–4(9) [1985] is tortious conduct that may give rise to a cause of action by a spouse for loss of consortium. In such a case, however, the spouse must show that the loss of consortium flows from the insurer's delay and not from the original injury suffered by the other spouse. The defendant argues that the Polings were in the process of obtaining a divorce. This is an issue for the jury to consider when arriving at the proper amount of damages for loss of consortium; it does not, however, in and of itself, preclude a cause of action for loss of consortium.

In answering these questions this Court is not passing upon the merits of this particular case. The Polings still need to prove that there was indeed a bad faith settlement, that Motorists' conduct was so outrageous that punitive damages are justified, and that Mrs. Poling deserves a monetary award for loss of consortium.

Accordingly, the certified questions having been answered, this case is ordered dismissed from the docket of this Court.

Certified questions answered.

BROTHERTON, C.J., did not participate.

MILLER, Retired J., sitting by temporary assignment.