**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TIMOTHY D. MIRANDY; SUZANNE C.
MIRANDY,
<u>Plaintiffs-Appellants,</u>

v.                                                          No. 97-1966

ALLSTATE INSURANCE COMPANY,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-96-72-5)

Argued: March 5, 1998

Decided: June 1, 1998

Before MICHAEL and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed in part and reversed in part by unpublished per curiam opin-
ion. Senior Judge Phillips wrote a concurring opinion.

_____

**COUNSEL**

**ARGUED:** Ronald William Kasserman, SEIBERT & KASSER-
MAN, L.C., Wheeling, West Virginia, for Appellants. Brent Karleton
Kesner, KESNER & BRAMBLE, Charleston, West Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Timothy and Suzanne Mirandy filed this action in West Virginia state court against their insurer, Allstate Insurance Company, which timely removed the case to federal court on the basis of diversity of citizenship. The Mirandys allege that Allstate (1) violated the West Virginia Unfair Claims Settlement Practices Act and (2) acted in bad faith under the common law. Both causes of action stem from Allstate's asserted bad faith failure to settle, within policy limits, a suit brought against the Mirandys by Carol Thoburn. After a full trial in the underlying suit, Thoburn prevailed, winning a jury verdict of $229,500, well exceeding the limits of the Mirandys' policy. Allstate ultimately paid the entire judgment -- even the amount in excess of policy limits.

Nevertheless, the Mirandys sought declaratory relief as to their liability for the excess verdict, compensatory damages in the amount of $250,000, an unspecified amount of punitive damages, attorney fees, and costs. Allstate moved for summary judgment on all claims, which the district court granted. See Mirandy v. Allstate Ins. Co., C.A. No. 5:96CV72 (N.D. W. Va. Feb. 10, 1997). Subsequently, the court also denied the Mirandys' motion to lift a confidentiality order that the magistrate judge had imposed on discovery materials produced by Allstate and the attorney Allstate hired to represent the Mirandys in Thoburn's suit against them. The Mirandys appeal both rulings. We affirm in part and reverse in part.

I.

The district court set forth most of the relevant facts in its memorandum opinion granting Allstate's motion for summary judgment. Id. We will not repeat them here but will simply refer to critical facts as we address the legal issues.

2

We review the district court's order granting summary judgment <u>de novo</u>. Summary judgment is proper when no genuine issue of material fact exists and, taking the evidence in the light most favorable to the nonmovant, the movant is entitled to judgment as a matter of law. <u>See</u> <u>M & M Medical Supplies & Servs., Inc. v. Pleasant Valley Hosp., Inc.</u>, 981 F.2d 160, 162-63 (4th Cir. 1992).

II.

The Mirandys initially claimed that Allstate violated two portions of West Virginia's Unfair Claims Settlement Practices Act. <u>See</u> W. Va. Code §§ 33-11-4(f) and (n) (Michie 1996) (UCSPA).**1** That statute provides in pertinent part:

_____

**1** A private cause of action exists under the UCSPA for both insureds and third-parties. <u>See Maher v. Continental Cas. Co.</u>, 76 F.3d 535, 542-43 (4th Cir. 1996); <u>Romano v. New England Mut. Life Ins. Co.</u>, 362 S.E.2d 334, 337 n.3 (W. Va. 1987); <u>Jenkins v. J.C. Penney Cas. Ins. Co.</u>, 280 S.E.2d 252, 258 (W. Va. 1981), <u>overruled in part on other grounds by State ex rel. State Farm Fire & Cas. Co. v. Madden</u>, 451 S.E.2d 721, 724-25 (W. Va. 1994). However, in the cases decided under the statute to date, the plaintiff, whether first-party insured or third-party beneficiary, was also the claimant. The Mirandys, of course, did not claim benefits (other than defense and liability coverage) from Allstate. In the district court, Allstate asserted that for this reason the Mirandys could not bring an action under the UCSPA. The company has not repeated that argument before us. Thus, Allstate appears to recognize that it is probably doomed.

Although the statute provides relief for those negotiating a claim settlement with the insurer -- i.e., claimants -- it also contemplates forcing the insurer to consider and protect the interests of insureds. <u>See, e.g.</u>, § 33-11-4(9)(k) and (l) (speaking of both"insureds or claimants"). Improper settlement conduct by an insurer affects the interests of the insured whether the insured is the actual claimant <u>or</u> merely the object of a third-party suit. The effect is simply less direct in the latter case: the insurer's bad faith settlement conduct improperly exposes the insured to risk of liability to a third party in the event of an excess verdict. In both situations, permitting a cause of action would seem to be equally "consistent with the underlying legislative purpose, which is to prevent improper settlement practices." <u>Jenkins</u>, 280 S.E.2d at 258.

3

No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

. . . .

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

. . . .

(n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

Id. Allstate's main contention is that the Mirandys suffered "no compensable loss" under the UCSPA because Allstate paid the entire amount of the excess judgment.

To prevail on a claim under the UCSPA, a party obviously must suffer injury. See Maher v. Continental Cas. Co. , 76 F.3d 535, 542-43 (4th Cir. 1996) ("West Virginia recognizes a private cause of action for damages arising from an insurer's violation of Subsection (9), whether the injured party is the insured or a third-party claimant")(emphasis added); Romano v. New England Mut. Life Ins. Co., 362 S.E.2d 334, 337 n.3 (W. Va. 1987) ("a violation of [Subsection (9)] by an insurer gives rise to a private right of action in favor of an aggrieved insured or beneficiary") (emphasis added; alteration in original); Jenkins v. J.C. Penney Cas. Ins. Co. , 280 S.E.2d 252, 258 (W. Va. 1981) ("the right of a person injured as a result of an unfair settlement practice to recover damages acts as a deterrent against violations of the act") (emphasis added), overruled in part on other grounds by State ex rel. State Farm Fire & Cas. Co. v. Madden, 451 S.E.2d 721, 724-25 (W. Va. 1994).

However, several recent West Virginia cases indicate that plaintiffs can recover compensatory damages and attorney fees under the UCSPA even when the insurer pays the excess amount of the verdict.

4

In Dodrill v. Nationwide Mut. Ins. Co., 491 S.E.2d 1, 8 (W. Va. 1996), a jury awarded Mr. Dodrill, a third-party claimant, over $12,000 as compensation for annoyance and inconvenience, attorneys fees incurred in the underlying action, and punitive damages. The West Virginia Supreme Court of Appeals concluded that, even though the insurer paid the entire sum of the underlying verdict to Dodrill, "a reasonable inference to be drawn from the long sequence of events leading up to Mr. Dodrill's initial lawsuit against Nationwide is that he did suffer inconvenience as a result of the failure of Nationwide to settle his claim." Id. at 13. Similarly, in Poling v. Motorists Mut. Ins. Co., 450 S.E.2d 635 (W. Va. 1994), another third-party claimant brought an action against the insurer for bad faith settlement of its underlying personal injury claim. Again, the West Virginia Supreme Court of Appeals noted that "a cause of action for insurance bad faith settlement may arise even if there has been a settlement." Id. at 637.

In McCormick v. Allstate Ins. Co., 475 S.E.2d 507 (W. Va. 1996), an insured sued his insurer for failure to compensate him adequately for the loss of his automobile. The West Virginia Supreme Court of Appeals ruled that the insured could not recover attorney fees or punitive damages under the common law cause of action identified in Hayseeds, Inc. v. State Farm Fire & Cas., 352 S.E.2d 73 (W. Va. 1986),[2] because the insured had not substantially prevailed in the underlying action against the insurer. McCormick, 475 S.E.2d at 517-18. However, the court concluded that the insured could maintain an action under the UCSPA, id. at 520, and stated that"[a] prevailing plaintiff in [a UCSPA] claim may recover his increased costs and expenses, including increased attorney fees, resulting from the insurance company's use of an unfair business practice in the settlement or failure to settle fairly the underlying claim." Id. at 515.

Likewise, in Maher the insured filed a claim with his insurer for lost business income resulting from a fire. Maher, 76 F.3d at 539. The insurer denied coverage and the insured sued, asserting, among other

_____

**2 Hayseeds**, which is not central to this suit, held that where an insured sues his own insurer over a property damage claim and substantially prevails, the insurer may be held liable for consequential damages, including annoyance and inconvenience, attorney fees, and perhaps punitive damages, stemming from the insurer's conduct.

claims, a violation of the UCSPA. Id. After several years of wrangling, and while the issue was before the district court, the insurer offered a $12,000 settlement, which the insured refused. At trial, the judge awarded the insured only $5,118, and dismissed his UCSPA claim because Maher ultimately received less than the settlement offer. Id. at 540. We reversed, finding that, regardless of the settlement amount, the insured could proceed under the UCSPA. Id. at 543-44.

These cases indicate that annoyance and inconvenience attributable to an insurer's underlying settlement conduct constitute compensable injury in and of themselves under the UCSPA. This proposition comports with the broad purpose of the statutory scheme. The West Virginia legislature, rather than simply addressing the outcome of settlement negotiations, sought in the UCSPA "to prevent improper settlement practices" generally, Jenkins, 280 S.E.2d at 258, including conduct during settlement negotiations. We therefore conclude that insureds can maintain a suit against their insurer under the UCSPA to recover compensation for any annoyance and inconvenience suffered, as well as attorney fees, despite the fact that their insurer paid the excess verdict.

The remaining question is whether the Mirandys have presented sufficient evidence to raise a jury question as to whether they suffered such damages in this case. Allstate claims that it orally told the Mirandys prior to the March 1995 trial of Thoburn's claim that none of the Mirandys' money was at stake. The Mirandys, however, maintain that this is not the case. Moreover, the Mirandys note that in 1993, Allstate informed them in writing that they would be responsible for any excess liability. Although Anthony Werner, the lawyer Allstate hired for the Mirandys, sent them a letter on July 25, 1995, four months after the March verdict, stating"[a]s I expressed to you both on numerous occasions prior to and even subsequent to the verdict . . . none of your personal assets had been, nor will they ever be, at stake in this case," the very next day the Mirandys' own lawyer wrote to Allstate and denied this contention. In that letter, the Mirandys' lawyer further stated: "Allstate Insurance Company [has] never acknowledged its responsibility to me or the Mirandys. . . . For over two (2) years Timothy and Suzanne Mirandy have anguished over their potential personal exposure for liability to Mrs. Thoburn. . . .

6

[T]heir fear that they could lose their homes to Mrs. Thoburn during the time their claim against Allstate was pending[ ] has been significant." He asked the company to "[p]lease confirm, in writing, that Allstate is going to pay the entire verdict . . . so that Timothy and Suzanne Mirandy will have no personal liability." Allstate did not respond to this letter.

The Mirandys acknowledge that Werner told them during jury deliberations they would not be liable for an excess verdict. However, it not clear that Werner, a lawyer Allstate hired to represent the Mirandys, had authority from Allstate to bind the company to pay the excess verdict for the Mirandys. After all, despite the July 1995 letter from the Mirandys' lawyer requesting that Allstate confirm in writing that it would not seek recovery for the excess verdict from the Mirandys, Allstate never issued such a written statement until it filed an amended answer to the Mirandys' complaint in July 1996. Furthermore, even if Werner did have authority from Allstate to tell the Mirandys during jury deliberations that Allstate would pay any excess verdict, this statement came a little late in the day. The accident had occurred four years earlier, and two years earlier Allstate expressly informed the Mirandys of their right to obtain their own counsel and their personal liability for any verdict in excess of policy limits. Certainly an insured that retains counsel and faces liability for two years may suffer annoyance and inconvenience -- and attorney fees -- just as a claimant would where an insurer delays settlement, regardless of whether the insurer ultimately pays the excess. Cf. Poling, 450 S.E.2d at 637 ("The mere fact that after months of delay and hassle the insurance company deigns to speak to the injured party and settles the case . . . does not preclude the plaintiff from later bringing a bad faith action . . . .").

In Dodrill, the West Virginia Supreme Court of Appeals determined that, viewing the facts in the light most favorable to Dodrill, a reasonable jury could conclude the insurer acted in bad faith in violation of the UCSPA. In reaching this conclusion, the court considered that liability was clear, that the claimant negotiated with the insurer for two-and-a-half years without obtaining a settlement, that numerous contacts existed between the claimant and the insurer and that the jury rendered a verdict twice the insurer's settlement offer. See Dodrill, 491 S.E.2d at 11-13.

7

In this case, the "negotiations," to the extent there were any, continued for four years without obtaining a settlement. Liability was clear from the start. Even if causation was debatable, both medical experts opined that the accident contributed to Thoburn's injuries. Moreover, although Allstate seeks to blame Thoburn for delaying the availability of her medical records, almost two years prior to trial an Allstate representative noted that Thoburn's medical records at that time were "quite voluminous." Contacts with Allstate were numerous; Thoburn and the Mirandys each made multiple requests that Allstate settle for the policy limits.

Werner (the attorney Allstate hired) advised Allstate well prior to trial that "if the jury does believe [Thoburn's] version, [the] verdict can be expected to reach well into six figures," and suggested that the company settle within the $70,000 to $80,000 range. In response, an Allstate claims representative increased reserves for the case to $65,000, re-valued the case at $75,000, and asked for settlement authority in that amount, yet Allstate's managers never authorized a settlement offer above $20,000. The jury returned a verdict more than ten times Allstate's settlement offer.

Given the above facts, a reasonable jury could determine Allstate acted in bad faith in violation of the UCSPA. Thus, the district court erred in granting summary judgment to Allstate. This is not to say that the Mirandys are entitled to judgment as a matter of law. Allstate well may be able to demonstrate that Thoburn created delay by failing to provide documentation, that the company acted reasonably based on evidence that called into question the cause of Thoburn's injuries, and that Allstate timely informed the Mirandys that they would not be liable for an excess verdict. But a jury must decide these questions.

III.

The district court also granted summary judgment to Allstate on the Mirandys' common law bad faith claim. The court recognized that, under Shamblin v. Nationwide Mut. Ins. Co., 396 S.E.2d 766 (W. Va. 1990), an insurer may be liable to an insured for an excess verdict rendered against the insured in an underlying personal injury suit where the insurer in bad faith fails to settle the claim within the policy limits.

8

The West Virginia Supreme Court of Appeals adopted a two-part bad faith standard in Shamblin. First, "wherever there is a failure on the part of an insurer to settle within policy limits where there exists the opportunity to so settle and where such settlement within policy limits would release the insured from any and all personal liability," the insured has established a prima facie case of bad faith. Id. at 776. Second, when such a prima facie case has been established, the insurer then bears the burden

> to prove by clear and convincing evidence that it attempted in good faith to negotiate a settlement, that any failure to enter into a settlement where the opportunity to do so existed was based on reasonable and substantial grounds, and that it accorded the interests and rights of the insured at least as great a respect as its own.

Id.

The district court stated that it did not think Shamblin provided a basis for the Mirandys' claim because Allstate paid the excess verdict without forcing the Mirandys to bring an action against Allstate. Certainly, Shamblin and its progeny deal with situations where the insured sought recovery for an excess verdict that the insurer declined to pay. See, e.g., id. at 771; Marshall v. Sasseen, 450 S.E.2d 791, 797-98 (W. Va. 1994).

However, the facts and result in Shamblin suggest that in the appropriate case an insured can recover damages for an insurer's bad faith even if the insurer pays the excess verdict prior to any action against it by the insured. In Shamblin, the insurer refused to settle the underlying personal injury suit against the insured within the policy limits of $100,000. After trial, a jury returned a verdict against the insured for $697,500. Thus, the insured became personally liable for the $597,500 -- the excess amount. The insured sued the insurer to recover the excess verdict, asserting that the insurer acted in bad faith. A jury awarded the insured compensatory damages of $1,000,000, punitive damages of $1,500,000, and attorney fees of $330,000. Shamblin, 396 S.E.2d at 769, 771. On appeal, the West Virginia Supreme Court of Appeals affirmed the $1,000,000 award of compensatory damages, which surpassed the excess verdict amount by more

9

than $400,000. The Mirandys assert that the $402,500 differential between the underlying excess verdict ($597,500) and the compensatory damages awarded to the insured in Shamblin ($1,000,000) reflected compensation to the insured for annoyance and inconvenience stemming from the insurer's bad faith. See Reply Brief of Appellant at 12.

The Shamblin court did not explain the basis for the award of $402,500 -- the difference between the excess verdict and the amount the insured obtained from its insurer. Unlike the UCSPA cases, no court has held that an insured can seek compensation for annoyance and inconvenience in a Shamblin claim; but, no court has held that an insured cannot so recover. In light of the extensive West Virginia case law sustaining claims for various kinds of damages in suits brought by insureds against their insurers, we believe the West Virginia Supreme Court of Appeals would conclude that an insured can recover compensation for annoyance and inconvenience suffered when an insurer breaches its common law duty to act in good faith and to place the insured's interest on an equal footing with its own. Cf. Miller v. Fluharty, No. 23993, 1997 WL 771057, at *7 (W. Va. Dec. 16, 1997) (in common law Hayseeds action, insured can recover for annoyance and inconvenience and reasonable attorney fees incurred by insurer's failure to settle). To hold otherwise would allow an insurer that knows it acted in bad faith to escape liability for the insured's annoyance, inconvenience, and attorney fees simply by paying the excess verdict before the insured has opportunity to bring suit. Accordingly, the district court erred in granting Allstate summary judgment on the Mirandys' bad faith claim.**3**

_____

**3** The district court also erred in concluding that Allstate satisfied the second prong of Shamblin. As explained, supra, in part II, Allstate has produced evidence that it acted in good faith, but it has not proven, as a matter of law, that it did so. Taking the evidence in the light most favorable to the Mirandys, a reasonable jury could conclude that Allstate acted in bad faith. Of course, if on remand the Mirandys should prevail on both their statutory and common law bad faith claims, there can be no duplication of damages.

10

IV.

West Virginia law provides for the availability of punitive damages from an insurer in both UCSPA and Shamblin bad faith actions. The plaintiff must establish that the insurer acted with actual malice, which means the insurer knew the claim was proper but nonetheless acted willfully, maliciously, and intentionally in failing to settle the claim on behalf of its insured. See Dodrill, 491 S.E.2d at 14 (UCSPA); McCormick, 475 S.E.2d at 515 (same); Poling, 450 S.E.2d at 637-38 (same); Shamblin, 396 S.E.2d at 772-73 (common law); Berry v. Nationwide Mut. Fire Ins. Co., 381 S.E.2d 367, 374 (W. Va. 1989) (same).

The district court ruled that "in addition to finding that there has been insufficient evidence to create a jury question on plaintiff's statutory and common law bad faith claims, this court[ ] finds that there is no evidence in the record that Allstate acted with actual malice in handling the Mirandys' claims." The Mirandys contend that they have proffered sufficient evidence from which a reasonable jury could conclude Allstate acted with actual malice.

In Dodrill, after reviewing the record the West Virginia Supreme Court of Appeals concluded that the trial court "did not commit reversible error in committing the issue of punitive damages to the jury . . . [because the evidence was] sufficient to support a jury conclusion that the actions of [the insurer] were willful, malicious, or intentional." Dodrill, 491 S.E.2d at 14-15. Consistent with Dodrill, the evidence detailed above, examined in the light most favorable to the Mirandys, could lead a reasonable jury to conclude that Allstate intentionally failed to settle the Thoburn claim when it knew the claim was proper. Again, Allstate has evidence to make a very strong case to the contrary, but that question is for a jury to decide.

V.

In the early days of this suit, Allstate moved for a protective order pursuant to Fed. R. Civ. P. 26(c) to prevent dissemination of its claims file and the work product of Werner by the Mirandys or their present lawyer. Allstate worried that the Mirandys would pass the material to Thoburn and her attorneys for use in Thoburn's similar

11

bad faith case against Allstate. On November 22, 1996, a magistrate judge granted the motion so that Allstate would have the opportunity to litigate in state court whether the documents were discoverable by Thoburn in her case, or whether Allstate could assert privilege vis-a-vis Thoburn, even though it could not do so vis-a-vis the Mirandys. In the order, the magistrate judge noted that the Mirandys objected to the ruling.

After the district court awarded summary judgment to Allstate, the Mirandys filed a motion to lift the confidentiality order. The court denied the motion, reasoning that the Mirandys had failed to properly appeal the magistrate judge's confidentiality order. Although they made the oral objection that was noted in the order, they did not file written exceptions to the magistrate judge's opinion within ten days as required by Fed. R. Civ. P. 72(a). Assuming the oral objection sufficed, the district court concluded that the magistrate judge's ruling was not clearly erroneous. We review the trial court's refusal to lift the order of confidentiality for abuse of discretion. See M & M Medical Supplies & Servs., 981 F.2d at 163.

The Mirandys do not assert they have been unable to obtain access to Allstate's or Werner's records. Instead, they want the ability to hand the records over to Thoburn's attorneys. As such, they cannot demonstrate that the protective order resulted in "substantial prejudice" to their case. See id. The magistrate judge's conclusion that, although Allstate cannot assert privilege with regard to the Mirandys, the company should have the opportunity to litigate whether privilege exists with regard to Thoburn is not unreasonable. Accordingly, the district court did not abuse its discretion in sustaining the magistrate judge's order. Thus, the protective order will stand. We need not reach the district court's alternative holding involving Rule 72(a).

VI.

For all of these reasons, the judgment of the district court granting summary judgment is reversed and the order denying the motion to vacate the protective order is affirmed.

AFFIRMED IN PART AND REVERSED IN PART

12

PHILLIPS, Senior Circuit Judge, concurring:

I concur in the judgment and in all of the majority opinion except that portion of Part I that purports to hold for this court (though by footnote) that W. Va. Code §§ 33-11-4(9)(f) and (n) (UCSPA) creates a private right of action in insureds such as plaintiffs to recover damages for improper settlement practices by their insurers in matters not involving claims by the insureds for policy benefits. Ante, slip op. 3, n.1. That is an important and, I believe, debatable issue of West Virginia insurance law that has not been addressed by the state courts and is not properly presented for decision by this court. Nor is its resolution necessary under the procedural circumstances of this case to our decision to remand the statutory claim for further proceedings. Accordingly, I think that we should, and properly may, leave it an open question in this court in the course of remanding the claim. A brief explanation is in order.

In the district court, Allstate specifically raised as its base-line defense that §§ (f) and (n) of the UCSPA did not give improper settlement practice rights of action to insureds except in connection with their own claims for insurance benefits. Alternatively, Allstate contended that if the right existed, the Mirandys had failed to raise a genuine issue of material fact respecting insurer bad faith, an essential element of the statutory claim. The district court expressly recognized but declined to address the statutory interpretation defense. (See J.A. 94 (Mem. Op., n.3).) Instead, implicitly assuming for purposes of the case that the statute did create such a right of action, the court held that the Mirandys' claim failed as a matter of law because they had not raised a genuine issue of fact as to Allstate's bad faith.

On the Mirandys' appeal, Allstate as appellee did not raise, as it might have,[1] the statutory interpretation issue as an alternative basis for affirming the judgment in its favor on this claim. Under those circumstances, we should have treated that issue as procedurally

_____

[1] Whether by cross-appeal, if it be considered that a judgment on this basis would "enlarge" the basis upon which summary judgment was granted, or simply by raising it as an appellee as a basis for affirming that favorable judgment. See United States v. American Ry. Express Co., 265 U.S. 425, 435 (1924) (Brandeis, J.) (differentiating the two procedures).

13

defaulted by Allstate. And, making the assumption of statutory coverage forced by that default, we then should have addressed only the issue properly raised by the Mirandys: whether summary judgment was properly granted for failure of forecast proof on the bad faith element of the <u>assumed</u> statutory cause of action. The majority notes the procedural default and addresses the issue raised by the Mirandys as the basis for remanding the claim but it does not stop there. Instead it goes on, as I think it should not have, to hold that Allstate's alternative statutory defense, which was not addressed by the district court and not raised on this appeal, failed as a matter of law.

How, if we did abstain from addressing that issue, would that leave the case upon remand? Specifically, if we did not address the issue, would Allstate be precluded by reason of its procedural default on appeal from again raising it for initial consideration by the district court? My solution on that would be expressly to leave it to the district court for first instance consideration as a"law of the case" question. That doctrine has sufficient flexibility to permit its fair consideration here. <u>See generally</u> 18 Charles Alan Wright, <u>et al.</u>, <u>Federal Practice and Procedure</u> § 4478 (1981). And, because the factors properly to be considered in applying the doctrine are peculiarly within the district court's competence in this case, that is where it should first be considered. The virtue of this approach would be that if Allstate were held precluded by law of the case considerations, the general question of the statute's coverage would remain open in the federal courts, unaffected by anything unnecessarily said in this case.**2** And, on the other hand, were Allstate allowed by the district court to raise the issue again, it could then be addressed definitively by that court, or possibly considered for certification to the West Virginia Supreme Court.

_____

**2** This is said with awareness that the question would in any event remain an open one in the state courts, and that unpublished opinions of this court can have only annoyance effect. But, even that, I believe, is worth avoiding where possible.

14