582 S.E.2d 877

Crystal Johnston MILLS and Ronald Nicholas Mills and Ronald Nicholas Mills, as Father and Next of Friend of Alyssa Nicole Mills, an Infant Under the Age of Eighteen, and Jane Doe, and John Doe, Plaintiffs Below, Appellants

v.

Krista WATKINS and Wanda Watkins and Sarah Long, and Nationwide Mutual Insurance Company, a Foreign Corporation, Defendants Below, Appellees.

No. 30694.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2003.

Decided May 22, 2003.

Concurring and Dissenting Opinion of Justice McGraw July 2, 2003.

Concurring Opinion of Chief Justice Starcher July 11, 2003.

Stephen D. Paesani, Princeton, for Plaintiffs Below, Appellants.

**432**

C. William Davis, Richardson & Davis, PLLC, Bluefield, for S. Long and Nationwide.

MAYNARD, Justice:

The appellant, Crystal Johnston Mills, appeals the November 2, 2001 order of the Circuit Court of Mercer County. In its order, the circuit court declined to grant relief from a previous order which granted summary judgment to Nationwide Mutual Insurance Company, agent Sarah Long, Krista Watkins, and Wanda Watkins. Because the appellant, by her legal guardian, settled and released all claims against the insured and the insurance company in compliance with W.Va.Code § 44–10–14 (1929), we find no error.

## I.

### FACTS

On August 2, 1996, the appellant was one of two passengers who was injured in a single-vehicle accident. At the time of the accident, Krista Watkins was driving a vehicle that was owned by her mother, Wanda Watkins, and insured by Nationwide Mutual Insurance Company (Nationwide). The appellant injured her left shoulder and incurred medical expenses in the amount of $21,335.61. The appellant's mother, Dorcas Knuckles, qualified as legal guardian.[1] Pursuant to W.Va.Code § 44–10–14 (1929),[2] the court appointed attorney Ward Morgan to serve as *guardian ad litem*.

Ms. Knuckles entered into settlement negotiations with Wanda Watkins' insurer, Nationwide, through Nationwide's representative, Sarah Long. David Johnston and Dorcas Knuckles, as parents and natural guardians of the appellant, and Dorcas Knuckles, as legal guardian, entered into a release and settlement agreement with Nationwide. The agreement stated that the appellant acknowledged receipt of $10,000 cash along with $18,391.73 for medical expenses and $1,000 under the medical payments coverage of the policy. The agreement also provided that the appellant would receive a lump sum payment in the amount of $20,340 on her eighteenth birthday. In return, the appellant released the insured and the insurer from any further damages. The circuit court approved the settlement agreement by order entered on August 6, 1997.

The appellant subsequently married and had a daughter. On her twentieth birthday, June 5, 2000, the appellant, her husband, Ronald Nicholas Mills, and her husband as next friend and father of her daughter, Alyssa Nicole Mills, and unborn children, Jane Doe and John Doe, filed a complaint against Krista Watkins, Wanda Watkins, Sarah Long, and Nationwide seeking to set aside the settlement agreement and obtain additional insurance resources for medical expenses and loss of consortium and exemplary damages.[3] Alternatively, the appellant sought to proceed against the insurer under the West Virginia Unfair Trade Practices

---

1. The appellant's parents were divorced. The appellant resided primarily with her mother, Dorcas Knuckles, but frequently visited her father, David Johnston. Ms. Knuckles had no underinsured *motorist coverage*; however, Mr. Johnston had an insurance policy with Audubon Insurance Company which provided per person underinsured motorist coverage in the amount of $100,000.

2. W. Va.Code § 44–10–14 (1929) states in pertinent part:

In any case where an infant is injured in his person or his property by another, the legal guardian of such infant may negotiate with the person inflicting such injury for the settlement of any claim for damages therefor. But the guardian shall, when proceeding under this section, before making final settlement, file his petition in equity with the circuit court of the county, or judge thereof in vacation, in which he was appointed, for permission to settle such claim, in which petition he shall state the name and age of his ward, the nature and character of the injury, and the facts relied upon by him to induce the court or judge to approve such proposed settlement. The court, or judge thereof in vacation, shall appoint a guardian ad litem for the ward who shall answer the petition. Upon the hearing thereof, the court or judge thereof in vacation, may grant or refuse the petition by a proper order, as may seem just and proper.

3. All consortium claims were abandoned in the proceedings which took place in circuit court and the Mills do not contest the dismissal of these claims on appeal.

Act, W.Va.Code § 33–11–4 (1985) (UTPA).[4] The appellant alleged Long and Nationwide misrepresented the amount of coverage that was available to compensate her for her injury. She specifically complained in her amended complaint, filed on July 14, 2000, that Long "intentionally and illegally" failed to tell her that the combined payments to all persons injured in the accident did not exhaust the policy limits. The amended complaint also contained a count for fraud.

Long, Nationwide, and the Watkins filed motions to dismiss the complaint attaching thereto copies of the release and settlement agreement and the court's August 6, 1997 order. On December 27, 2000, the circuit court dismissed the complaint, reserving unto the appellant the opportunity to set forth with particularity the circumstances surrounding the claim of fraud.[5] The appellant abandoned her claim for fraud by declining to follow the court's suggestion. Instead, she filed a motion asking the court to alter or amend its judgment. She subsequently clarified her motion by requesting that her claims for additional medical expenses and consortium be dismissed; she also requested that she be allowed to refile her UTPA claims. On November 2, 2001, the circuit court denied relief. It is from this order that the appellant appeals.

## II.

### STANDARD OF REVIEW

■ The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syllabus Point 1, *Wickland v. American Travellers Life Ins.*, 204 W.Va. 430, 513 S.E.2d 657 (1998). In the present case, the circuit court dismissed the appellant's complaint "under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure [ ] for failure to state a claim upon which relief can be granted and/or the defense of settlement and release."

In dismissing the action, the circuit court relied on evidence outside the pleadings. Attached as exhibits to the motions to dismiss were the release and settlement agreement, the settlement order, the petition for settlement, and the order appointing a *guardian ad litem.* In its December 27, 2000 order, the court specifically stated that it had studied the motions to dismiss, "the memoranda of law and exhibits submitted by the parties, and other relevant legal authorities." Under these circumstances, Rule 12(b)(6) grants circuit courts the authority to treat motions to dismiss as motions for summary judgment. The rule states in pertinent part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

■ Moreover, this Court previously held:

Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of under Rule 56

---

4. The Legislature rewrote this statute in 2002. The new statute became effective on June 7, 2002, several months after the circuit court entered its final order in this case. Thus, we will apply the law as it was written when these proceedings occurred.

   W.Va.Code § 33–11–4(9)(a) (1985) states, "No person shall commit or perform with such frequency as to indicate a general business practice

any of the following: (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue[.]"

5. This order is signed by Judge David W. Knight. Following entry of this order, Judge Knight retired. The remaining order that was subsequently entered in this case is signed by Judge Derek Swope.

R.C.P. if there is no genuine issue as to any material fact in connection therewith. Syllabus Point 4, in part, *United States Fidelity and Guaranty Co. v. Eades,* 150 W.Va. 238, 144 S.E.2d 703 (1965). Because the circuit court considered matters outside the pleadings, we find that the court's order must be treated as one granting summary judgment. It is well-settled that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

### III.

### DISCUSSION

On appeal, the appellant contends the circuit court erred by denying her motion for relief from judgment. She supports her claim by stating that Nationwide made material representations which she later learned were misrepresentations. In the interim, her legal guardian relied upon the representations to settle her claim. As an injured third party, she believes the misrepresentations may form the basis to bring a UTPA action against the insurer and the tortfeasor who were both released in the settlement agreement. In her brief filed on appeal, the appellant makes clear that she challenges only the circuit court's dismissal of Counts VI and VII of her amended complaint. These counts read as follows:

### COUNT VI

By their actions as hereinabove stated, the Defendants Nationwide and Long breached their duties under the West Virginia Unfair Trade Practices Act to not misrepresent policy coverages and provide truthful representations concerning insurance benefits, as stated in W.Va.Code § 33–11–4(1)(a).

\* \* \*

### COUNT VII

By their actions as hereinabove stated, the Defendants Long and Nationwide breached their duties as provided in W.Va. Code § 33–11–4(9)(a), (e), (f), (g), (j), (m)

and (n) with such frequency as to indicate a general business practice.

The appellant's principal argument on appeal is that the circuit court erred by holding that the case of *Poling v. Motorists Mut. Ins. Co.,* 192 W.Va. 46, 450 S.E.2d 635 (1994), precludes her UTPA cause of action. She argues that *Poling* is a case of inclusion under which she should be allowed to bring her complaint because she was not aware of the insurer's conduct at the time she released Nationwide in the settlement agreement. She acknowledges that *Poling* involved an insurance company that was not released in the settlement agreement and that this Court added that the insurer must be aware of the possibility of a bad faith action at the time the settlement is reached before a UTPA cause of action may be maintained. She, nonetheless, argues that *Poling* should not be read in a manner which precludes her from asserting a UTPA cause of action.

The appellant also avers that the facts of her case are similar to the facts contained in *Elmore v. State Farm Mut. Auto. Ins. Co.,* 202 W.Va. 430, 504 S.E.2d 893 (1998). She reasons that "this Court would not have reached the issues it ultimately ruled upon in *Elmore*" if *Poling* precluded such actions. However, the claim in *Elmore* could not proceed because it was time barred. Nationwide argues that if the appellant had accepted the circuit court's offer to plead fraud with specificity, then she could have, with sufficient proof, rescinded the settlement agreement and proceeded against Nationwide under the UTPA or attempted to recover her alleged damages. For the reasons set forth below, we do not believe that Nationwide engaged in unfair claim settlement practices at the time the appellant's claim settled.

Bad faith insurance practices were discussed by this Court in the *Poling* case. In *Poling,* the plaintiff, Jeffrey Poling, was rear-ended by a drunk driver, William Bonar, who was driving his father's vehicle without permission and without a valid driver's license. The insurer of the Bonar vehicle finally settled with Poling after twelve months of repeated attempts to resolve the property damage and personal injury claims.

At the time of settlement, the insurance company tendered a settlement agreement that contained a release of both the tortfeasor and the insurer. Poling released the tortfeasor but refused to release the insurance company.

Poling subsequently filed a lawsuit against the insurance company alleging bad faith insurance practices. The insurance company argued that settlement of the underlying tort claim precluded an unfair claim settlement practices legal action from being filed against it. This Court disagreed and held:

A cause of action for insurance bad faith may arise even if there has been a settlement and release of the underlying case against the tortfeasor so long as the release does not cover the insurer and the insurer is, or should be, aware of the possibility of a bad faith action at the time it agrees to the settlement.

Syllabus Point 2, *Poling, supra.* The appellant in the case at bar encourages us to broaden this holding to include cases such as hers in which the insurer was released in the settlement agreement. We decline to do so.

The appellant overlooks the fact that the circuit court carefully followed the guidelines set forth in W.Va.Code § 44–10–14 (1929). The appellant's mother, who qualified as legal guardian, negotiated with the insurance company to settle the appellant's claim for damages. The legal guardian requested permission from the court to settle the claim before the settlement agreement was agreed upon and adopted by all parties. The circuit court appointed a *guardian ad litem* to represent the interests of the appellant. The *guardian ad litem* approved the agreement. The court found that the agreement was in the best interest of the appellant and entered an order which approved the release and settlement agreement. In other words, the court granted the legal guardian's petition which requested permission to settle the claim. We find no fault with the procedure followed by the circuit and believe it adequately protected the financial interest of the appellant.

We also reject the appellant's assertion that the facts of her case are similar to the facts contained in *Elmore v. State Farm Mut. Auto. Ins. Co.*, 202 W.Va. 430, 504 S.E.2d 893 (1998). In *Elmore*, Chester Workman drove his vehicle across the center line and collided with a vehicle operated by Michael Elmore. Elmore's pregnant wife and unborn child were killed. He and his three-year-old son were injured. Three passengers in the Workman vehicle were injured and Chester Workman was killed in the accident. Workman was insured by State Farm under a liability insurance policy with limits of $100,000 per person and $300,000 per occurrence. Elmore was insured by Allstate under a policy of underinsured motorist coverage.

State Farm's insurance adjuster contacted Elmore regarding his claims and informed him that he would not receive the entire policy limit of $300,000 because $100,000 was being retained to settle the claims of the passengers in the Workman vehicle. State Farm drafted releases which were presented to Elmore. At that time, Elmore informed the adjuster that he would like to retain an attorney. The adjuster advised him that he did not need an attorney and told him that he would receive the maximum amount available to him under the policy. Elmore subsequently entered into a settlement and release, pro se, for the amount of $200,000. He did not know that State Farm had previously paid only $57,500 to settle the claims of the occupants of the Workman vehicle. Elmore then contacted his insurer, Allstate, concerning underinsurance coverage (UIM). Allstate refused to admit or deny his claim for approximately two years. Elmore subsequently hired an attorney and filed suit against the Estate of Chester Workman, State Farm, and Allstate.

After the lawsuit was filed, Allstate claimed it was denying UIM coverage because the State Farm policy limits were not exhausted. State Farm then agreed to rescind the releases and paid Elmore the remaining $42,500 available under the Workman policy. Four years after filing the first lawsuit, Elmore instituted a second legal action against State Farm, Allstate, and the

agents of both companies. The complaint alleged, *inter alia*, that State Farm breached its fiduciary duty and an implied covenant of good faith and fair dealing that was owed to Elmore as a third-party claimant. The circuit court certified the following question:

Whether, under West Virginia law, there is a legally cognizable cause of action by a third-party claimant against an insurance carrier for common law breach of fiduciary duty and for common law breach of the implied covenant of good faith and fair dealing (common law bad faith).

■ This Court answered the certified question in the negative and held that "[a] third party has no cause of action against an insurance carrier for common law breach of the implied covenant of good faith and fair dealing or for common law breach of fiduciary duty." Syllabus, *id.* The Court went on to hold that third parties may, however, maintain actions against insurance companies under the UTPA. This holding was clarified by quoting Syllabus Point 4 of *Dodrill v. Nationwide Mut. Ins. Co.*, 201 W.Va. 1, 491 S.E.2d 1 (1996), which states:

To maintain a private action based upon alleged violations of W.Va.Code § 33–11–4(9) in the settlement of a single insurance claim, the evidence should establish that the conduct in question constitutes more than a single violation of W.Va.Code § 33–11–4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a "general business practice" and can be distinguished by fair minds from an isolated event.

*Elmore*, 202 W.Va. at 439, 504 S.E.2d at 902.

■ After considering the record presented on appeal, we conclude that the appellant entered into a settlement and release of the underlying case with both the tortfeasor and the tortfeasor's insurer, Nationwide. While the appellant alleges that the insurer made misrepresentations in the course of settling the underlying case, the settlement agreement appears to release the insurer for any such conduct. In fact, the settlement agreement contains the following paragraph:

The undersigned, and each of them, have read the foregoing Agreement and fully understand it, and are aware of the propriety and legal effect of executing the same, and neither the Agreement nor the compromise and settlement recited herein were induced by fraud, coercion, compulsion or mistake, nor is this Agreement nor the compromise and settlement made by the undersigned *in reliance upon any statement or representation of any of the parties hereby released, or their representatives, agents or attorneys.* (Emphasis added).

The appellant's parents, David Johnston and Dorcas Knuckles, signed the release and settlement agreement with Nationwide's agent, Sarah Long. During oral argument before this Court, Nationwide's attorney stated that the *guardian ad litem* advised the appellant's legal guardian that this was the appellant's "only bite at the apple." In sum, the appellant's legal guardian, the *guardian ad litem*, and the circuit court believed that the settlement sufficiently compensated the appellant for her injuries, and released the tortfeasor and Nationwide from any future liability—including liability under the UTPA.

Under these circumstances, we find no indication that Nationwide misrepresented the "insurance policy provisions relating to coverages" during the time that the underlying release and settlement agreement was negotiated and adopted by the parties in this case. If we were to accept the theory urged upon us by the appellant, then every *guardian ad litem* who fails to get the full policy limits for the infant claimants that he or she represents could potentially be liable for malpractice. Moreover, any insurance company that does not offer the policy limits and UIM policy limits to every infant claimant would be liable under the UTPA when the infant reaches majority. Also, such a rule would have a profound chilling effect on the willingness of insurance companies to settle cases; would interfere with the prompt and early payment to plaintiffs who have suffered mi-

nor or non-catastrophic injuries; and would leave open no practical or safe way to settle infants' claims. We must have rules that foster and encourage the voluntary and fair resolution of disputes and quick payment of claims.

Examining the record, we find no reason to alter our holding in Syllabus Point 2 of *Poling* when a fair and equitable settlement is properly reached in the case of a minor. We, therefore, hold that when an infant is injured in an automobile accident and the infant's legal guardian enters into a settlement agreement with an insurer by complying with the dictates set forth in W.Va.Code § 44–10–14 (1929), the settlement is final as to that insurance company at the time the circuit court approves the legal guardian's petition for permission to settle the claim if the insurer is released in the settlement agreement and the insurer is unaware of any misconduct which would constitute substantive grounds for a bad faith action at the time the insurer agrees to the settlement. In the case at bar, Nationwide did not unfairly settle the appellant's claim. The appellant's reliance upon the UTPA is unfounded.

Consequently, we find that the circuit court did not err by granting summary judgment to Long, Nationwide, and the Watkins or by failing to alter or amend the judgment. For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

Justice McGRAW concurs, in part, and dissents, in part, and files a separate opinion.

Chief Justice STARCHER concurs and files a concurring opinion.

(Filed July 2, 2003)

McGRAW, J., concurring, in part, and dissenting, in part.

I can agree with the outcome of the majority opinion in this case. The court did appoint a *guardian ad litem* for the minor plaintiff in this case, she did have the benefit of counsel, and the court approved the settlement. However, I must dissent to some of the language employed by the majority in syllabus point three. The majority holds that a settlement that complies with W. Va.Code § 44–10–14 (1929) is final, provided that "the insurer is unaware of any misconduct which would constitute substantive grounds for a bad faith action at the time the insurer agrees to the settlement."

The essence of a bad faith suit is an allegation that an insurance company has committed some sort of improper conduct that has harmed its insured. This syllabus point asks plaintiffs who have been forced already to take the insurance company to court, to then trust the company when it says that no misconduct occurred. It strikes me as exceedingly likely that almost every defendant insurance company in a bad faith suit like this one will be "unaware of any misconduct" that occurred at the time of the settlement.

Because I cannot agree with such an egregious example of "letting the fox guard the hen house," I must respectfully dissent to this aspect of the majority opinion.

(Filed July 11, 2003)

STARCHER, C.J., concurring.

I concur with the majority's holding, but write separately to demonstrate, in simpler terms, how I view the holding of the case.

In this case, the plaintiff-teenager was injured in an automobile accident caused by another teenager, the "tortfeasor." The plaintiff-teenager did not hire a lawyer; instead, she and her mother negotiated with the tortfeasor's insurance company, Nationwide, themselves. To protect the plaintiff-teenager's rights, the circuit court later appointed a lawyer to serve as *guardian ad litem.*

The plaintiff-teenager; her legal guardian, the plaintiff-teenager's mother; the plaintiff-teenager's father; the *guardian ad litem;* and the circuit court, reviewed and approved the settlement offer and settlement agreement proposed by Nationwide. The settlement offer gave the plaintiff-teenager nearly $50,000.00 in cash. In return, the plaintiff-teenager signed an agreement that gave up her rights to sue the tortfeasor and the owner of the automobile the tortfeasor had negligently driven, *and* gave up any rights against Nationwide for its conduct in the course of

**438**

handling and settling the plaintiff-teenager's claim.

When the plaintiff-teenager reached majority age, she filed suit against Nationwide seeking damages under the Unfair Trade Practices Act, *W.Va.Code*, 33–11–4 [1985].[1] The plaintiff-teenager alleged that Nationwide made misrepresentations during the settlement process that improperly induced the plaintiff-teenager to agree to the settlement. Upon motion by Nationwide, the circuit court dismissed the plaintiff-teenager's complaint under Rule 12(b)(6) of the *Rules of Civil Procedure*, concluding that she had failed to state a claim because the settlement agreement previously signed by the plaintiff-teenager specifically released Nationwide for any misconduct during the settlement process.

Based on these facts, I support the majority opinion's decision to affirm the circuit court's dismissal of the plaintiff-teenager's complaint against Nationwide. The plaintiff-teenager—with the advice and consent of her parents, *guardian ad litem*, and the circuit court—plainly released Nationwide from any and all liability under the Unfair Trade Practice Act. The plaintiff-teenager could have insisted that the language releasing "bad faith" claims against Nationwide be removed from the agreement, but neither she nor her representatives did so. The briefs of the parties in this case presented no reason why that plainly-worded release should now be set aside to allow the plaintiff-teenager a "second bite at the apple."

One other point should be noted about the majority's opinion: in *dicta*, the majority opinion indicates that the Court found "no indication that Nationwide misrepresented the 'insurance policy provisions relating to coverages' during the time that the underlying release and settlement agreement was negotiated and adopted by the parties in this case." The majority opinion goes on to contend that *guardians ad litem* could face liability for malpractice if they "fail[ ] to get the full policy limits for [ ] infant claimants" if we were to accept the plaintiff-teenager's argu-

ments that Nationwide engaged in unfair trade practices. Because this case is before the Court upon the circuit court's granting of a Rule 12(b)(6) motion to dismiss for failure to state a claim, there isn't a lot of record to support or contradict these "findings." Such "findings" by the Court are also irrelevant, considering the fact that the Court's decision is guided by the explicit terms of the settlement agreement and not the parol evidence surrounding the signing of the agreement.

That said, I otherwise respectfully concur.

---

1. The plaintiff-teenager also filed suit against the tortfeasor seeking additional tort-related damages. The circuit court dismissed this part of the plaintiff-teenager's complaint, and the plaintiff-teenager did not appeal this part of the circuit court's ruling.