Hillsborough, }
Dec. 2, 1947. } No. 3693.

### MAURICE H. DUMAS

*v.*

### HARTFORD ACCIDENT & INDEMNITY COMPANY.

*McLane, Davis & Carleton* and *Stanley M. Brown* (*Mr. Brown* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Wyman* orally), for the defendant.

JOHNSTON, J. The authorities are divided concerning the liability of an indemnity company that has final control over settlement for negligence in failing to settle a claim when possible to do so within the policy limits. "According to the old majority rule, the insured could recover the excess of a judgment above the policy limits from the insurer, because of its failure to effect a settlement for a smaller sum, only if the company was guilty of actual fraud or bad faith. It should be noted, however, that this bad faith rule is tending to become the minority rule, being displaced by the rule of negligence, which is discussed hereafter." 8 Appleman, Insurance Law and Practice, *s. 4712, pp.* 76, 77.

The leading case in this state to the effect that an insurer may be liable for negligence in the failure to make a compromise settlement irrespective of good faith is *Douglas* v. *Company*, 81 N. H. 371. "The defendant concedes that *Cavanaugh* v. *Corporation*, 79 N. H. 186, permits a recovery for a negligent failure to settle, but it is urged that the decision is contrary to reason and to the authorities elsewhere. . . .

"Our law upon the subject is based upon the broad proposition that in all its dealings with the defense to [the injured party's] claim the defendant was bound to act as a reasonable man might act under the same circumstances." *Id.*, 374, 375. In this case the policy limit was $5,000. The company refused an offer to settle for $1,500 and a verdict was given the plaintiff in the accident case for $13,500. The principle of the *Cavanaugh* and the *Douglas* cases has been recognized by *dicta* in *Lumbermen's Casualty Company* v. *Yeroyan*, 90 N. H. 145; *Duncan* v. *Company*, 91 N. H. 349, and *Dumas* v. *Company*, 92 N. H. 140.

Cases from other jurisdictions that adopt this rule of liability for negligence are collected in 8 Appleman, Insurance Law and Practice, *p.* 80, *n.* 30.

The obligation of the defendant to use due care arose out of its policy, under the terms of which it had control over the settlement of claims. "That obligation [to use care] is ordinarily imposed by law upon all who undertake a service. *Burnham* v. *Stillings*, 76 N. H. 122, and cases cited." *Douglas* v. *Company, supra*, 375. See also, *Mehigan* v. *Sheehan, ante*, 274.

The duty of the insurer was not only to pay on behalf of the insured all sums the latter should become obligated to pay because of bodily injury within the policy limit of $5,000, but also to save the insured harmless from any and all liability caused by accident and arising out of the ownership, maintenance or use of his automobile in so far as it could do so by a reasonable performance of its service to settle claims. It is a well-recognized rule in the law of negligence that, when one knows or has reason to anticipate that the person, property, or rights of another are so situated as to him that they may be injured through his conduct, it becomes his duty so to govern his action as not negligently to injure the person, property, or rights of that other. *Attleboro Mfg. Company* v. *Company*, 240 Fed. 573, 579. "The whole question of insurance against loss may be laid out of the case, and still the defendant would be accountable for negligence. It had contracted to take charge of the defense of this claim. That contract created a relation out of which grew the duty to use care when action was taken. The insurer entered upon the conduct of the affair in question. It had and exercised authority over the matter in every respect, even to negotiating for a settlement. It is difficult to see upon what ground it could escape responsibility when its negligence resulted in damage to the party it had contracted to serve." *Douglas* v. *Company, supra*, 367.

The standard of care is at least what a reasonable man would exercise in the management of his own affairs. "Since a liability insurer has absolute control over any negotiations for a settlement or compromise of claims against the insured, some courts have adopted the rule that such insurer will be held to that degree of care and diligence which a man of ordinary care and prudence should exercise in the management of his own business." 8 Appleman, Insurance Law and Practice, *s.* 4713, *p.* 80. In other words, in deciding whether or not to settle, the insurer must be as quick to compromise and dispose of the claim as if it itself were liable for any excess verdict. *Douglas* v. *Company, supra*, 376. Moreover it follows from the standard of due care that the insurer cannot be too venturesome and speculate with a trial of the issues in the accident case at the risk of

the insured. The defendant was obliged reasonably both to consider the risk to Dr. Dumas and to be willing to purchase termination of Miss Moran's claim within the policy limit. Anticipation of loss to the insurer need only be such as a reasonable person would have and would guard against. "Danger consists in the risk of harm as well as the likelihood of it, and a danger calling for anticipation need not be of more probable occurrence than less. If there is some probability of harm sufficiently serious that ordinary men would take precaution to avoid it, then failure so to do is negligence. That the danger will more probably than otherwise not be encountered on a particular occasion does not dispense with the exercise of care." *Tullgren* v. *Company*, 82 N. H. 268, 276.

Something more than an act of judgment is involved in the decision of the insurer to stand trial or to settle. A judgment carefully arrived at must be accompanied by conduct consistent therewith. So far as its interest is concerned, there must be a willingness within the policy limit reasonably to spend its money in purchasing immunity for the insured. Due care must be exercised in ascertaining all the facts of the case both as to liability and damages, in learning the law and in appraising the danger to the insured of being obliged to pay the excess portion of a verdict. While the insurer has a reasonable right to try its case in court, it cannot be unduly venturesome at the expense of the insured. The caution of the ordinary person of average prudence should be employed.

In the case at bar there was evidence from which the jury could find negligence on the part of the defendant in failing to settle. It had the opportunity to compromise the claim of Miss Moran. Prior to January of 1938 she offered to accept $4,000 in full settlement; in that month the figure was raised to $4,500. A few days before trial, she was willing to take $4,750 in full for her claim and this offer stood during the trial until the case was submitted to the jury. Within a few days after the accident the attorney in charge of the New Hampshire claim department of the defendant placed a settlement value of $2,000 or $2,500 on the case. This value was not raised above the latter figure until after verdict.

The out-of-pocket expenses of Miss Moran on August 15, 1939, when her deposition was taken amounted to $2,971.50. Her most serious injury was to the left knee. A week after the accident an open reduction of the knee fracture was performed. This disclosed an avulsion fraction of the attachment of both the anterior crucial ligament and the inner lateral ligament, the latter of which was torn off

from its attachment and required suture.  There were fractures of the tibia and fibula bones in the knee joint, plus a fracture of a spine in the knee process itself.  The bone fracture within the joint required drilling and suture.  There was cartilage damage.  At the time of the trial two and one-half years after the accident Miss Moran still suffered pain.  The disability of her left knee was still present and was estimated to be a permanent 33% disability.  She used a cane.

While this court said in *Moran* v. *Dumas, supra,* 337, that the evidence was much in conflict and in some respects confusing, it could be found by the jury in the present case that the facts relating to the negligence of the driver of the automobile and the contributory negligence of the pedestrian were so close that the ordinary man of average prudence would have accepted the offer of settlement in view of the serious injuries resulting in a permanent disability and the out-of-pocket losses shown.

It is unnecessary to consider the extent of the company's knowledge at the time of the different offers of Miss Moran.  During the trial all of the pertinent facts were disclosed and the offer of $4,750 was open until the case was submitted to the jury.  The defendant company does not deny that it had full knowledge of the facts in time to accept the offer of $4,750.  Nor could it do so.  Not only was the defendant's attorney, in charge of the claim department in New Hampshire, who had been admitted to practice in this state, in communication during the trial with both the company's trial attorney and the attorney for Dr. Dumas, which latter attorney sat in during the trial, but also the company was bound by the knowledge of its trial attorney, which became complete.  This attorney was employed not only to conduct the trial of the accident case, with which no fault is found, but also to advise concerning settlement.  ''Notice to the attorney is notice to his client, at least where the attorney receives such notice in the course of the transaction in which he is acting for his client.''  5 Am. Jur. 302, and cases cited in note 13.  "Notice to the attorney, whether actual or implied, is considered notice to the client, and binds him, when the notice is in the course of the transaction in which the attorney is acting for him."  *Butler* v. *Morse,* 66 N. H. 429, 431.  There is no evidence that the company turned over to the trial attorney control over the matter of settlement.

Also, there is no need of fastening responsibility upon particular agents of the defendant.  It is not disputed that the attorney in charge of the claims department was the agent of the company for the purpose of investigation and reporting information and that the

trial attorney had the duty to advise. Professional negligence of counsel is imputed to the client when the attorney is acting within the scope of his authority. "He accepted the services of the attorneys furnished him by the indemnity company, and any accident or misfortune he may have suffered through any mistake of theirs was chargeable to them or to the indemnity company. . . . " *Hubley* v. *Goodwin*, 91 N. H. 200, 203. See also, *Attleboro Mfg. Company* v. *Company*, *supra*, 581.

The fact that the defendant took into consideration the advice of counsel does not excuse it. Such professional advice is merely one item to be considered in determining the due care of the indemnity company. "The defendant had the exclusive control of the defense, which carried with it the right to employ whomever it chose as its attorney and to direct him in the management of the case as it saw fit. Under such circumstances, [the attorney] was the defendant's agent for whose conduct, while in its service and acting within the scope of his employment, it was responsible. The mere fact that he was also an attorney at law did not excuse the defendant from responsibility in this respect." *Attleboro Mfg. Company* v. *Company*, *supra*, 581.

It was not contributory negligence on the part of the plaintiff Dumas to have failed to pay the $2,250 difference between what Miss Moran asked and what the defendant company had offered to pay. There was no duty on the part of the insured to contribute towards the payment that the company was obligated to make under the policy. This duty was sole, not joint.

The charge that the verdict, if for the plaintiff, should be in the sum of seven thousand dollars was correct. Mitigation of damages did not require that the plaintiff attempt to beat down Miss Moran in what had been established legally as her due.

The argument that such a case as the present one should not be tried without expert legal testimony on the question of negligence as in malpractice cases was decided adversely to the defendant in *Douglas* v. *Company*, *supra*, 374. The accident case was decided by a jury. The risk which that trial involved for the present defendant and its insured could well be understood by a jury with the aid of arguments of counsel and of appropriate instructions from the court. The issue for the jury was not the technical question of whether there was sufficient evidence for the accident case to go to the jury but whether the danger of adverse rulings and verdict was so great that a reasonable man would avoid it.

The various exceptions to the argument, to the denial of certain requests of the defendant and to evidentiary rulings have been considered at length. No reason for a new trial has been discovered.

*Judgment on the verdict.*

DUNCAN, J., did not sit: the others concurred.