504 S.E.2d 893

**Michael R. ELMORE, Individually and as the Administrator of the Estate of Tamela Faith Elmore, and as Guardian of Andrew C. Elmore, a Minor, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Allstate Insurance Company, Roberta Axton Paugh, and Annabell Hawkins, Defendants.**

No. 24634.

Supreme Court of Appeals of West Virginia.

Submitted April 28, 1998.

Decided June 22, 1998.

Paul J. Harris, Harris & Bush, Elkins, for Elmore.

Catherine D. Munster, James A. Varner, Gregory H. Schillace, McNeer, Highland & McMunn, Clarksburg, for State Farm & Paugh.

E. Kay Fuller, Dale A. Buck, Walter Jones, Martin & Seibert, Martinsburg, for Allstate & Hawkins.

MAYNARD, Justice:

We are called upon here to answer a certified question from the Circuit Court of Harrison County regarding the viability of a third-party common law bad faith insurance action. The certified question and the circuit court's answer are as follows:

1. W.Va.Code § 58–5–2 (1967) provides in relevant part:

Any question arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the circuit court of a person or subject matter, or upon failure to

Whether, under West Virginia law, there is a legally cognizable cause of action by a third-party claimant against an insurance carrier for common law breach of fiduciary duty and for common law breach of the implied covenant of good faith and fair dealing (common law bad faith).

Answer of the circuit court: Yes.

■ This certified question comes to us as the result of the circuit court's partial denial of the defendant's motion for judgment on the pleadings and for summary judgment. Questions pertaining to a ruling of the trial court on a motion for judgment on the pleadings are properly certifiable.[1] Also,

West Virginia Code, 58–5–2 (1967), allows for certification of a question arising from a denial of a motion for summary judgment. However, such certification will not be accepted unless there is a sufficiently precise and undisputed factual record on which the legal issues can be determined. Moreover, such legal issues must substantially control the case.

Syllabus Point 5, *Bass v. Coltelli,* 192 W.Va. 516, 453 S.E.2d 350 (1994). We have determined there is a sufficiently precise and undisputed factual record upon which the legal issues may be resolved and "such legal issues ... substantially control the case." *Id.* The question before us, therefore, is properly certified under W.Va.Code § 58–5–2 (1967) and is within the jurisdiction of this Court.

I.

FACTS

A sketch of the pertinent facts is as follows. On August 10, 1990, Chester Workman drove his vehicle across the center line of the roadway and collided with a vehicle operated by the plaintiff, Michael Elmore.

join an indispensable party, in any case within the appellate jurisdiction of the supreme court of appeals, may, in the discretion of the circuit court in which it arises, and shall, on the joint application of the parties to the suit, in beneficial interest, be certified by it to the supreme court of appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back.

The collision resulted in the deaths of the plaintiff's pregnant wife, Tamela Faith Elmore, and unborn child as well as injuries to the plaintiff and his three-year-old son, Andrew C. Elmore. At the time of this accident, Chester Workman was insured by defendant State Farm Mutual Automobile Insurance Company ("State Farm") under a liability insurance policy with limits of $100,000 per person and $300,000 per occurrence. Defendant Allstate Insurance Company ("Allstate") insured the plaintiff under a policy of underinsured motorist coverage.

Concerning the events which gave rise to the underlying action, the plaintiff alleges the following occurred. In the aftermath of the auto accident, Defendant Roberta Paugh, employed by State Farm as an insurance adjuster, contacted the plaintiff regarding his claims against Chester Workman. Paugh informed the plaintiff that he would not receive the entire $300,000 policy limit because $100,000 was being retained by State Farm to settle the claims of the passengers in the Workman vehicle.[2] Allstate instructed the plaintiff to first settle with State Farm before filing his claim for underinsured coverage with Allstate.

State Farm subsequently drafted releases for the disputed claims. At this time, the plaintiff informed State Farm that he desired to retain an attorney before executing the releases. Paugh, however, advised the plaintiff that there was no need to retain an attorney because he was receiving the maximum amount available to him under the policy, and if he hired an attorney, he would ultimately pay one third of his recovery in attorney fees. Consequently, the plaintiff, *pro se,* entered into a settlement and release with the estate of Chester Workman and State Farm in the amount of $200,000. Unknown to the plaintiff at this time, however,

State Farm had paid only $57,500 to the occupants of the Workman vehicle.[3]

The plaintiff subsequently contacted Allstate concerning his underinsurance policy. Allstate, through its agent Annabelle Hawkins, also a defendant in the underlying claim, repeatedly informed the plaintiff that she was in contact with her superiors regarding his claim. For close to two years, Allstate refused to either admit or deny the plaintiff's claim for underinsured policy coverage.[4]

As a result, the plaintiff retained an attorney and in August 1992 filed suit against the Estate of Chester Workman, State Farm and Allstate in the Circuit Court of Randolph County. At this time, Allstate asserted that it was denying the plaintiff's underinsurance claim on the basis that the limits of the State Farm policy were not exhausted and that the plaintiff had failed to preserve Allstate's subrogation rights. By agreement, State Farm rescinded the releases formerly executed by the plaintiff and paid the remaining $42,500 available under Workman's liability policy.

The plaintiff instituted the underlying action in the Circuit Court of Harrison County on December 2, 1996 against State Farm, Allstate, Paugh and Hawkins. State Farm moved to dismiss, which motion was granted in part and denied in part. Relevant to our purposes, the complaint alleges that State Farm breached its fiduciary duty and an implied covenant of good faith and fair dealing owed to the plaintiff, a third-party claimant. The trial court denied State Farm's motion to dismiss these allegations but certified the question as to their legal viability. This Court granted the Petition for Docketing of Certified Question. All remaining counts of the complaint relating to State Farm have been dismissed and are not the subject of this certified question. Also, the

2. Ida Workman, Betty Workman and Nellie Workman, passengers in the Workman vehicle, were injured. Chester Workman was killed in the accident.

3. In their answer to the plaintiff's complaint, State Farm and Paugh deny that State Farm informed the plaintiff that the most he could recover was $200,000. They further deny that State Farm informed the plaintiff that he should not retain an attorney.

4. In its answer to the plaintiff's complaint, Allstate denies that it, through its agent Annabelle Hawkins, repeatedly informed the plaintiff that she was in contact with her superiors regarding his claim. Allstate further denies that it refused for nearly two years to either admit or deny the plaintiff's claim for underinsured coverage.

remaining counts against Allstate have not been dismissed but are pending below and are not involved in the certified question.

## II.

### STANDARD OF REVIEW

■ "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996).

## III.

### DISCUSSION

We are asked to decide:

Whether, under West Virginia law, there is a legally cognizable cause of action by a third-party claimant against an insurance carrier for common law breach of fiduciary duty and for common law breach of the implied covenant of good faith and fair dealing (common law bad faith).

Prior to addressing the plaintiff's precise arguments based on the specific facts of this case, we will first consider whether there is a general third-party common law bad faith insurance claim under our law.

#### A. Third–Party Common Law Bad Faith Claim

■ This Court recognized a common law duty of good faith and fair dealing running from an insurer to its insured, a first-party claimant in a property damage case, in *Hayseeds, Inc. v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73 (1986). We articulated the applicable rule in Syllabus Point 1:

Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience.

This rule is based on the fact that, "when an insured purchases a contract of insurance, he buys insurance—not a lot of vexatious, time-consuming, expensive litigation with his insurer." *Hayseeds,* 177 W.Va. at 329, 352 S.E.2d at 79. Because a *Hayseeds* type action is grounded on the existence of a contract between an insurer and its insured and not the insurer's motives in denying a property damage claim,

we consider it of little importance whether an insurer contests an insured's claim in good or bad faith. In either case, the insured is out his consequential damages and attorney's fees. To impose upon the insured the cost of compelling his insurer to honor its contractual obligation is effectively to deny him the benefit of his bargain.

*Hayseeds,* 177 W.Va. at 329, 352 S.E.2d at 79–80.

In *Shamblin v. Nationwide Mut. Ins. Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990), this Court acknowledged the insurer's duty of good faith and fair dealing to an insured who is a tortfeasor. In that case, the insured brought an action against his insurer for failure to settle a claim in the underlying litigation within policy limits. In Syllabus Points 3 and 4, the Court set forth the following rule:

3. It will be the insurer's burden to prove by clear and convincing evidence that it attempted in good faith to negotiate a settlement, that any failure to enter into a settlement where the opportunity to do so existed was based on reasonable and substantial grounds, and that it accorded the interests and rights of the insured at least as great a respect as its own.

4. In assessing whether an insurer is liable to its insured for personal liability in excess of policy limits, the proper test to be applied is whether the reasonably prudent insurer would have refused to settle within policy limits under the facts and circumstances, bearing in mind always its duty of good faith and fair dealing with the insured. Further, in determining whether the efforts of the insurer to reach settlement and to secure a release for its insured as to personal liability are reasonable, the trial court should consider whether there was appropriate investigation and evaluation of the claim based upon objective and cogent evidence; whether the insurer had a reasonable basis to conclude that there was a genuine and substantial issue as to liability of its insured; and

whether there was potential for substantial recovery of an excess verdict against its insured. Not one of these factors may be considered to the exclusion of the others.

This Court later opined that "[i]t is beyond cavil that the ... *Shamblin* doctrine was created to protect policyholders who purchase insurance to safeguard their hard-won personal estates and then find these estates needlessly at risk because of the intransigence of an insurance carrier." *Charles v. State Farm Mut. Auto. Ins. Co.*, 192 W.Va. 293, 298, 452 S.E.2d 384, 389 (1994).

In *Marshall v. Saseen*, 192 W.Va. 94, 100, 450 S.E.2d 791, 797 (1994), this Court applied the principles in *Hayseeds* to uninsured and underinsured motorist coverage stating that,

an insurer is required to offer this statutorily authorized [uninsured and underinsured] coverage when issuing an automobile insurance policy. Such policies customarily contain coverage for property damage to the insured's vehicle. The critical point is that this [*Hayseeds* type] property damage coverage, as well as the uninsured and underinsured motorist coverage, constitutes first party insurance. First party insurance means that the insurance carrier has directly contracted with the insured to provide coverage and to reimburse the insured for his or her damages up to the policy limits.

The premise underlying *Hayseeds* was that the insurer had contractually promised the insured such coverage. Consequently, the insurer had a duty to settle with its insured on a claim for which the insured was legally entitled to recover. If the insurer declined to settle, and the insured was required to sue and then substantially prevailed, the insurer was liable for not just the verdict but also for attorney fees and incidental damages.

■ The foregoing summary makes it clear that the common law duty of good faith and fair dealing in insurance cases under our law runs between insurers and insureds and is based on the existence of a contractual relationship. In the absence of such a relationship there is simply nothing to support a common law duty of good faith and fair dealing on the part of insurance carriers toward third-party claimants. We therefore decline to expand our prior holdings regarding common law bad faith claims to allow third parties to bring an action against the insurance carrier of another.

Our holding here places us squarely in line with the overwhelming weight of authority on this issue. In fact, it appears that if we were to recognize a cause of action for third-party common law bad faith, we would be the only jurisdiction so to do. *See e.g., Major v. National Indem. Co.*, 267 S.C. 517, 520, 229 S.E.2d 849, 850 (1976) ("At common law, no right to maintain suit directly against the insurer existed absent privity of contract between the claimant and the insured."); *Allstate Insurance Co. v. Harris*, 133 Ga.App. 567, 571, 211 S.E.2d 783, 785 (1974) ("A liability insurance company may not be held liable to a possible beneficiary under the policy who has obtained a judgment against the insured for alleged bad faith, fraud or negligence on the part of the insurer in failing to settle the judgment with this beneficiary who is *not the holder of the policy* under the contract with the insured."); *Eichler v. Scott Pools, Inc.*, 513 N.E.2d 665, 667 (Ind. App. 2 Dist.1987) ("A claimant has no standing to sue the defendant's insurer for handling a claim negligently or in bad faith. There is no duty running from the insurer to the claimant to settle a claim, nor is the claimant a third-party beneficiary of the duty owed the insured by the insurer.") (Citations omitted); *Liimatta v. Lukkari*, 185 Mich.App. 144, 146, 460 N.W.2d 251, 252 (1990) ("The duty to use good faith in attempting to settle a claim runs only to the insured, not to the injured party.") (Citation omitted); *Schnacker v. State Farm Mut. Auto. Ins.*, 843 P.2d 102, 104 (Colo.App.1992) ("The duty of an insurer to act in good faith when dealing with its insured is recognized and is implied in law as a covenant of the insurance contract. The basis for liability in tort for the breach of an insurer's implied duty of good faith and fair dealing is grounded upon the special nature of the insurance contract and the relationship which exists between the insured and insurer. That foundation obviously does not exist for a third party.") (Citation omitted); and *Dvorak v. American Family Mut. Ins. Co.*, 508 N.W.2d 329, 332 (N.D.1993) ("... the genesis of an

insurer's duty to negotiate in good faith is its contractual responsibilities to the insured, we conclude that the duty does not extend to injured claimants who have no contractual relationship with the insurer.") (Footnote omitted).[5]

### B. Fiduciary Duty

■ Our conclusion that a third party has no cause of action against the defendant's insurer for common law breach of the implied covenant of good faith and fair dealing, however, does not completely answer the question before us. The gravamen of the plaintiff's argument is that State Farm's communications with him throughout the settlement process created a fiduciary relationship between the parties which State Farm subsequently breached by failing to settle the underlying claim in good faith. According to the plaintiff, while it may be arguable whether State Farm owed him a fiduciary duty on the basis of his status as an injured third-party claimant alone, it is unquestionable that such a duty arose once State Farm initiated communications with him. In advancing his argument, the plaintiff places special emphasis on the relative positions of the two parties during the settlement negotiations, that is, his own emotional vulnerability immediately following the deaths of his wife and unborn child and a powerful and astute insurance company bent on furthering its own narrow interests. For legal authority, the plaintiff looks to *Scott on Trusts*, 4th

Ed. § 499 at 515 which states that "where one man assumes to act as agent for another and the other reposes confidence in him, a fiduciary relation arises, although there is no written contract or no contract at all." *Also citing Equity, Fiduciaries & Trusts*, 1993, D. Waters, ed., Carswell Ltd., at 157–180. Thus, the specific issue as framed by the plaintiff is whether an insurer's communications to a third-party claimant can give rise to a fiduciary relationship and a concomitant common law claim for breach thereof.

The fiduciary duty is "[a] duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person. It is the highest standard of duty implied by law[.]" *Black's Law Dictionary* 625 (6th ed.1990). No one has captured the essence of the fiduciary obligation more eloquently than Justice Cardozo when he wrote:

Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular excep-

---

5. In addition to the cases cited above, *see also Hicks v. Alabama Pest Services, Inc.*, 548 So.2d 148 (Ala.1989); *Ring v. State Farm Mut. Auto. Ins. Co.*, 147 Ariz. 32, 708 P.2d 457 (App.1985); *Bell v. Kansas City Fire & Marine Ins. Co.*, 616 F.Supp. 1305 (W.D.Ark.1985); *Coleman v. Gulf Ins. Group*, 41 Cal.3d 782, 226 Cal.Rptr. 90, 718 P.2d 77 (1986); *Scribner v. AIU Ins. Co.*, 43 Conn.Supp. 147, 647 A.2d 48 (1994); *Messina v. Nationwide Mut. Ins. Co.*, 998 F.2d 2 (D.C.Cir. 1993); *Hettwer v. Farmers Ins. Co. of Idaho*, 118 Idaho 373, 797 P.2d 81 (1990); *Scroggins v. Allstate Ins. Co.*, 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1979); *Long v. McAllister*, 319 N.W.2d 256 (Iowa 1982); *Bell v. Tilton*, 234 Kan. 461, 674 P.2d 468 (1983); *Linscott v. State Farm Mut. Auto. Ins. Co.*, 368 A.2d 1161 (Me. 1977); *Bean v. Allstate Ins. Co.*, 285 Md. 572, 403 A.2d 793 (1979); *Nichols v. United States Fidelity & Guaranty Co.*, 318 F.Supp. 334 (N.D.Miss.1970); *Gunny v. Allstate Ins. Co.*, 108 Nev. 344, 830 P.2d 1335 (1992); *Duncan v. Lumbermen's Mut. Casualty Co.*, 91 N.H. 349, 23 A.2d

325 (1941), *overruled,* in part, *on other grounds by Hughes v. Hebert*, 106 N.H. 176, 207 A.2d 432 (1965); *Murray v. Allstate Ins. Co.*, 209 N.J.Super. 163, 507 A.2d 247 (1986); *Browdy v. State–Wide Ins. Co.*, 56 Misc.2d 610, 289 N.Y.S.2d 711 (N.Y.Sup.1968); *Wilson v. Wilson*, 121 N.C.App. 662, 468 S.E.2d 495 (1996); *Murrell v. Williamsburg Local School Dist.*, 92 Ohio App.3d 92, 634 N.E.2d 263 (1993); *Allstate Ins. Co. v. Amick*, 680 P.2d 362 (Okla.1984); *Terletsky v. Prud. Prop. & Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680 (1994); *Auclair v. Nationwide Mut. Ins. Co.*, 505 A.2d 431 (R.I.1986); *Clark v. Hartford Accident and Indemnity Co.*, 61 Tenn.App. 596, 457 S.W.2d 35 (1970); *Maryland Ins. Co. v. Head Indus. Coatings and Services, Inc.*, 40 Tex.Sup. Ct.J. 49, 938 S.W.2d 27 (1996); *Pixton v. State Farm*, 809 P.2d 746 (Utah App.1991); *Tank v. State Farm Fire & Cas. Co.*, 105 Wash.2d 381, 715 P.2d 1133 (1986); *Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis.2d 56, 307 N.W.2d 256 (Wis.1981); *Herrig v. Herrig*, 844 P.2d 487 (Wyo. 1992).

tions.... Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd[.] *Kanawha Valley Bank v. Friend,* 162 W.Va. 925, 928–929 n. 2, 253 S.E.2d 528, 530 n. 2 (1979), *quoting Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928). *See also Keesecker v. Bird,* 200 W.Va. 667, 679, n. 12, 490 S.E.2d 754, 766, n. 12 (1997). We simply fail to comprehend how such a duty can run from an insurance carrier to a third-party claimant.

To begin with, we find the plaintiff's reliance on *Scott On Trusts* to be misplaced. The section of that work in which appears the language quoted by the plaintiff is titled "Purchase by Fiduciary of Property that He Should Purchase for the Beneficiary." *Scott on Trusts,* 4th Ed. § 499, p. 503. The specific context of the language quoted by the plaintiff concerns a situation in which a defendant employed by plaintiffs to purchase certain land for them instead purchased the land with his own money and took a conveyance to himself. Obviously, that situation is not applicable to the instant one. Rather, "[a]s a general rule, a fiduciary relationship is established only when it is shown that the confidence reposed by one person was actually accepted by the other, and merely reposing confidence in another may not, of itself, create the relationship." 36A C.J.S. *Fiduciary,* p. 385 (1961). For several reasons, such a relationship cannot exist between a third-party claimant and a tortfeasor's liability insurer.

First, the relationship between an insurer and a third-party claimant in a settlement process is adversarial. "[T]hat the insurer is the representative of the insured logically imports that the third-party tort claimant's status as the adversary of the insured renders him, ipso facto, the adversary of the insured's agent." *Linscott v. State Farm Mutual Auto. Ins. Co.,* 368 A.2d 1161, 1163–64 (Me.1977). "[T]he insurer stands in the shoes of the insured in dealing with the victim." *Long v. McAllister,* 319 N.W.2d 256, 262 (Iowa 1982). Because the insurer is an adversary of a third-party claimant in the settlement process, the law cannot expect the insurer to subordinate its interests to those of the third party.

In addition, the insurer already has an implied duty of good faith and fair dealing to its insured. The duty of a liability insurer to its insured to settle a third-party liability claim against the insured was discussed in *Shamblin, supra* where the Court stated:

The duty of the insurer was not only to pay on behalf of the insured all sums the latter should become obligated to pay because of bodily injury within the policy limit of $5,000, but also to save the insured harmless from any and all liability caused by accident and arising out of the ownership, maintenance or use of his automobile in so far as it could do so by a reasonable performance of its service to settle claims. It is a well-recognized rule in the law of negligence that, when one knows or has reason to anticipate that the person, property, or rights of another are so situated as to him that they may be injured through his conduct, it becomes his duty so to govern his action as not negligently to injure the person, property, or rights of that another.

*Shamblin,* 183 W.Va. at 594–95, 396 S.E.2d at 775–76, *citing Dumas v. Hartford Accident & Indem. Co.,* 94 N.H. 484, 488, 56 A.2d 57, 60 (1947). "[I]n deciding whether or not to settle the insurer must be as quick to compromise and dispose of the claim as if it itself were liable for any excess verdict." *Shamblin,* 183 W.Va. at 595, 396 S.E.2d at 776, *citing Dumas* 94 N.H. at 488, 56 A.2d at 60. The significant duty owed by the insurer to the insured certainly forecloses any like duty owed by the insurer to a third party who is the adversary of the insured. An insurer cannot logically owe a duty of good faith and fair dealing to the insured and a fiduciary duty to an adversarial third party in the same matter.

Moreover, we are not persuaded by the plaintiff's assertion that if an insurer desires to avoid having to act against the interests of its insured, it can simply abstain from engaging in communications with a third-party claimant which give rise to the fiduciary relationship sued upon. As discussed above, the insurer's duty to the insured is significant, and its task of protecting the property and rights of its insured throughout the adversarial settlement process is a demanding one.

The rule urged on us by the plaintiff is plagued with ambiguity and uncertainty. The efforts of insurers to settle cases would be stifled by the specter that any communications made with a third party in the course of negotiations may be construed as creating a fiduciary obligation toward that party. We cannot help but believe that such a rule would result in a reduced number of settlements, while increasing both the number of litigated insurance claims and insurance costs of consumers.

Further, other states have uniformly rejected the notion that an insurer could have a fiduciary obligation to a third party. The reasons for this were stated concisely by the Supreme Judicial Court of Maine in *Linscott v. State Farm Mutual Auto. Ins. Co., supra:*

> The pre-trial negotiations which may be conducted between a tort claimant and a defending insurance company are *adversary* in nature and, hence, will not give rise to a *duty* to bargain in good faith, as claimed by plaintiff. A "duty of good faith and fair dealing" in the handling of claims runs only to an insurance company's insured, it derives from a covenant implicit in the provisions of the insurance contract establishing the insurer as the authorized representative of the insured and is, therefore, without application for the benefit of the adversary third party tort claimant. Indeed, that the insurer is the representative of the insured logically imports that the third party tort claimant's status as the adversary of the insured renders him, ipso facto, the adversary of the insured's agent. Thus, prior to the establishment of legal liability, as the tort claimant has no legal right to require the tortfeasor to negotiate or settle, it likewise lacks right to require such action by his representative. This is true even if it is the insurer which voluntarily initiates the pre-litigation negotiations with the injured tort claimant.

*Linscott,* 368 A.2d at 1163–64. (Citations omitted.) *See also* Syllabus Point 1, in part, *Francis v. Newton,* 75 Ga.App. 341, 43 S.E.2d 282 (1947) ("... there is no fiduciary relationship or privity of contract existing between the insurer and a person injured by one of its policyholders."); *Auclair v. Nationwide Mut. Ins. Co.,* 505 A.2d 431 (R.I. 1986) ("The relationship between the claim-

ant and the insurance carrier for a third party alleged to be liable is an adversary relationship giving rise to no fiduciary obligation on the part of such insurance carrier to the claimant. Any obligation to deal with settlement offers in good faith runs only to the insured[.]"); *Long v. McAllister, supra; Kranzush v. Badger State Mut. Cas. Co., supra;* and *Herrig v. Herrig, supra.*

In addition, it is instructive here that this Court has never recognized that the relationship between an insurer *and its insured* is in the nature of a fiduciary relationship. In *Shamblin, supra,* this Court quoted, as not being erroneous, the jury instructions in the underlying action which set forth the negligence standard in determining whether the insurer should be liable to its insured for the excess verdict awarded to the victim after the insurer's failure to settle. The jury instruction stated, in part, that "[t]he insurance company must take into account the interest of its insured and give its insured's interest *at least as much consideration as it gives its own interest." Shamblin,* 183 W.Va. at 593, 396 S.E.2d at 774. (Emphasis added.) This standard of duty is less than the fiduciary duty stated above.

> As a general rule, the relation between the parties to a contract of insurance is that of debtor and creditor; that is, of one contracting party to another contracting party, rather than of trustee and cestui que trust, or such as would arise by virtue of a will or other testamentary instrument. The relation is a legal one rather than an equitable one.
>
> However, insurance policies are contracts of the utmost good faith and must be administered and performed as such by the insurer.

Lee R. Russ, *Couch On Insurance 3D* § 40:7 at 40–9—40–10 (1997). (Footnotes omitted). If this Court has not recognized a fiduciary relationship between insurers and insureds, we are not disposed to recognize such a relationship between insurers and third parties whose interests are adversarial.

In his brief to this Court, the plaintiff avers that recognition of a third-party common law claim for breach of fiduciary duty against a tortfeasor's insurer is consistent with this Court's prior case law and cites *Hensley v. Erie Ins. Co.,* 168 W.Va. 172, 283

S.E.2d 227 (1981) for support. *Hensley* involved the certified question "whether '[i]n an action to recover excess judgments over the insurance coverage available ... the plaintiffs [may] recover punitive damages awarded against the insured in the original action.'" *Hensley,* 168 W.Va. at 173, 283 S.E.2d at 228. The Court noted that "[t]he certified question assumes the right of an injured plaintiff to bring an excess suit against the defendant's insurance carrier." *Id.* In a footnote, the Court observed that the trial court, "in a well-reasoned opinion," *id.* at n. 1, relied on *Thompson v. Commercial Union Insurance Company of New York,* 250 So.2d 259 (Fla.1971) in taking the position that the plaintiff could bring a direct action. The plaintiff here places great reliance on the reasoning and holding in *Thompson,* contending that West Virginia, like Florida, has long recognized the right of third-party beneficiaries to assert a claim for damages sustained as a result of the acts of one of the parties to the contract, and that our law, like that of Florida, also evidences a strong public policy favoring compromise and settlement.

The plaintiff's argument fails on this point as well. In *Hensley* this Court clearly stated that the portion of the trial court's opinion finding a right of direct action against an insurance carrier by a third-party plaintiff was not certified to the Court. This Court, therefore, did not at that time decide the issue. Also, in *Thompson,* the court's holding that "a judgement creditor may maintain suit directly against tortfeasor's liability insurer for recovery of the judgment in excess

of the policy limits, based upon the alleged fraud or bad faith of the insurer in the conduct or handling of the suit" was based in significant part on that state's third-party beneficiary rule. *Thompson,* 250 So.2d at 264. Under our law, however, the plaintiff here is not a third-party beneficiary of the insurance contract between State Farm and Workman. "[I]n order for a contract concerning a third party to give rise to an independent cause of action in the third party, it must have been made for the third party's sole benefit." *Robinson v. Cabell Huntington Hospital, Inc.,* 201 W.Va. 455, 498 S.E.2d 27 (1997) *quoting Woodford v. Glenville State College Hous. Corp.,* 159 W.Va. 442, 448, 225 S.E.2d 671, 674 (1976). *See also* W.Va.Code § 55–8–12 (1923). Clearly the insurance contract here was not made for the sole benefit of the plaintiff.[6]

Therefore, for the reasons stated above, we hold that a third party claimant has no cause of action against an insurance carrier for common law breach of the implied covenant of good faith and fair dealing or for common law breach of fiduciary duty.

### C. Statutory Unfair Settlement Practices Provision

 This does not, however, mean that third-party claimants are without a legal remedy when they are the victims of unfair settlement practices. This Court has held that there is an implied private cause of action for a violation by an insurance company of the unfair settlement practice provisions of W.Va.Code § 33–11–4(9)[7] *See Jenkins v. J.C. Penney Casualty Ins. Co.,* 167

---

6. Further, in the later case of *Fidelity and Cas. Co. of New York v. Cope,* 462 So.2d 459, 461 (Fla.1985), the Supreme Court of Florida explained:

[In *Thompson* ] [w]e did not extend the duty of good faith by an insurer to its insured to a duty of an insurer to a third party. The basis for an action remained the damages of an insured from the bad faith action of the insurer which caused its insured to suffer a judgment for damages above his policy limits. *Thompson* merely allowed the third party to bring such an action in his own name without an assignment.

7. W.Va.Code § 33–11–4(9) (1985) states:

(9) *Unfair claim settlement practices.*—No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

W.Va. 597, 280 S.E.2d 252 (1981), *overruled,* in part, *State ex rel. State Farm Fire v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994); and *McCormick v. Allstate Ins. Co.,* 197 W.Va. 415, 475 S.E.2d 507 (1996). Such a cause of action may arise where there is a settlement of the underlying claim as in the instant case. *See Poling v. Motorists Mut. Ins. Co.,* 192 W.Va. 46, 450 S.E.2d 635 (1994). Also, even though W.Va.Code § 33–11–4(9) requires more than a single isolated violation in order to show a general business practice, a claimant may produce sufficient evidence of this in a single claim. In Syllabus Point 4 of *Dodrill v. Nationwide Mut. Ins. Co.,* 201 W.Va. 1, 491 S.E.2d 1 (1996), this Court stated:

> To maintain a private action based upon alleged violations of W.Va.Code § 33–11–

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered;

(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(i) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;

(j) Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;

(k) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

(*l*) Delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

(m) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

4(9) in the settlement of a single insurance claim, the evidence should establish that the conduct in question constitutes more than a single violation of W.Va.Code § 33–11–4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a "general business practice" and can be distinguished by fair minds from an isolated event.

Unfortunately the plaintiff's cause of action under W.Va.Code § 33–11–4(9) was dismissed below as being time-barred.[8]

(o) Failing to notify the first party claimant and the provider(s) of services covered under accident and sickness insurance and hospital and medical service corporation insurance policies whether the claim has been accepted or denied and if denied, the reasons therefor, within fifteen calender days from the filing of the proof of loss: Provided, That should benefits due the claimant be assigned, notice to the claimant shall not be required: Provided, however, That should the benefits be payable directly to the claimant, notice to the health care provider shall not be required. If the insurer needs more time to investigate the claim, it shall so notify the first party claimant in writing within fifteen calender days from the date of the initial notification and every thirty calender days thereafter; but in no instance shall a claim remain unsettled and unpaid for more than ninety calender days from the first party claimant's filing of the proof of loss unless there is, as determined by the insurance commissioner, (1) a legitimate dispute as to coverage, liability or damages; or (2) if the claimant has fraudulently caused or contributed to the loss. In the event that the insurer fails to pay the claim in full within ninety calender days from the claimant's filing of the proof of loss, except for exemptions provided above, there shall be assessed against the insurer and paid to the insured a penalty which will be in addition to the amount of the claim and assessed as interest on such at the then current prime rate plus one percent. Any penalty paid by an insurer pursuant to this section shall not be a consideration in any rate filing made by such insurer.

8. The circuit court's order of July 24, 1997 dismissed the plaintiff's claim under W.Va.Code § 33–11–4(9) stating in relevant part:
> [T]he Court specifically finds that the statute of limitations with respect to a cause of action

In closing, we emphasize that if the plaintiff's allegations against State Farm are true, State Farm's actions toward the plaintiff are truly reprehensible.[9] This Court has a long-standing policy of encouraging compromise and settlement of disputed claims. This policy flows, in part, from the recognition that the prompt resolution of an insurance claim is usually of the utmost importance to a claimant as a means of righting a wrong, treating an injury, or repairing a loss, and hopefully restoring some normalcy and happiness to his life. Here, for example, the plaintiff faced staggering loss and yet was forced to grapple with two insurance companies over a period of years just to receive what was owed him. The equitable and efficient settlement of claims is only achieved when both parties conduct themselves honorably. This is especially true of insurance companies because they possess the preponderance of power in the settlement process. As noted above, we have set forth the standard of conduct expected of insurers in their contractual relationships with insureds. Likewise, the Legislature has prescribed the proper standard for insurance companies toward all claimants, including third parties, in W.Va.Code § 33–11–4(9).

## IV.

## CONCLUSION

For the foregoing reasons, we answer the certified question as follows:

Whether, under West Virginia law, there is a legally cognizable cause of action by a third-party claimant against an insurance carrier for common law breach of fiduciary duty and for common law breach of the implied covenant of good faith and fair dealing (common law bad faith).

ANSWER: No.

Certified question answered.

based upon the alleged violations of the West Virginia Unfair Claims Settlement Practices Act is one (1) year as provided by West Virginia Code § 55–2–12(c). Because the facts viewed most favorably for the plaintiff demonstrate that the statute of limitations began to run, at the latest, on May 1, 1995 and because this suit was not filed until November 27, 1996, it is the opinion of this Court that Count II of the plaintiff's Complaint, alleging violations of the West Virginia Unfair Claims Settlement Practices Act, West Virginia Code § 33–11–1 et seq., against the State Farm defendants, is barred by the one (1) year statute of limitations.

We note that the correctness of the circuit court's ruling on this issue was not presented in this proceeding.

9. *See* footnote 3.