Donald **GALLAGHER** and Lucas Gallagher, by and through his guardian Donald Gallagher, Plaintiffs,

v.

**ALLSTATE INSURANCE COMPANY,** and Elvis E. Zinn, Jr., Defendants.

No. CIV. A. 199CV82.

United States District Court, N.D. West Virginia.

Oct. 25, 1999.

J. Bryan Edwards, Morgantown, WV, for Plaintiffs.

Walter M. Jones, III, Dale A. Buck, Martin & Seibert, Martinsburg, WV, for Defendant Allstate Indemnity Co.

Boyd L. Warner, Scott A. Windom, Waters, Warner & Harris, Clarksburg, WV, for Defendant Elvis E. Zinn, Jr.

### MEMORANDUM OPINION AND ORDER

KEELEY, District Judge.

On June 16, 1999, the defendant, Allstate Indemnity Company ("Allstate"), filed a "Motion for Partial Summary Judgment" pursuant to Fed.R.Civ.Pro. 56, requesting summary or declaratory judgment in its favor on its counter-claim. (Docket No. 10.) No reply brief was filed on behalf of plaintiffs. With the expiry of the briefing period, this matter is now ripe for resolution.

### A. *Statement of the Case*

On May 26, 1997, the vehicle in which plaintiffs, Donald and Lucas Gallagher, were traveling was struck by defendant Zinn's vehicle at an intersection on Sunny Dale Road in Preston County. The Gallaghers filed suit against Zinn and Allstate in the Circuit Court of Monongalia County on April 1, 1999. Service of process was accepted by the Secretary of State, on behalf of Allstate, on April 5, 1999.

In Count One of their complaint, plaintiffs allege that they were injured as a result of Zinn's negligence. Count Two of the complaint alleges that Zinn's insurer, Allstate, has acted in bad faith in settling plaintiffs' claim against its insured. Paragraphs 11 and 12 of the complaint state that: "Defendant Allstate Insurance Company agreed to pay policy limits as a partial settlement to plaintiff Donald Gallagher," and that "[t]hereafter, Defendant Allstate Insurance Company reneged on it [sic] offer to partially settle Plaintiff Donald Gallagher's claims for policy limits and required a full release of Defendant Allstate Insurance Company's insured, Defendant Elvis Zinn, Jr., before tendering policy limits." Plaintiffs allege that such conduct violated West Virginia Code § 33–11–4(9) and other applicable statutory and common law authorities pertaining to bad faith and unfair claim settlement practices.

On May 3, 1999, Allstate removed the case to federal court and filed its answer and counterclaim. Removal was based upon diversity of citizenship, pursuant to 28 U.S.C. § 1441(b). Defendant Allstate is a foreign corporation with its principal

place of business in Illinois, defendant Zinn is a citizen of Ohio and plaintiffs are believed to be citizens of West Virginia. In its counterclaim, Allstate alleges that:

(1) At all times germane thereto the Defendant Allstate insured the Defendant Elvis Zinn, Jr. (hereinafter "Zinn") with liability policy limits of $20,000 per person, $40,000 per occurrence;

(2) Allstate has evaluated the Plaintiffs' claims and has offered to pay its policy limits to Plaintiffs in exchange for a release of its insured, while preserving the Plaintiff's [sic] rights to pursue underinsured motorist coverage, if any.

(3) Allstate recognizes a contractual obligation to defend Zinn and to indemnify Zinn for any judgments within policy limits, subject to policy provisions.

(4) Allstate recognizes a statutory and regulatory obligation to evaluate and to attempt to settle the claims made against its insured by third party claimants and Plaintiffs Donald Gallagher and Lucas Gallagher.

(5) An actual and justiciable controversy has arisen between Plaintiffs and Allstate regarding Allstate's obligation to pay policy limits when the value of the claim may be reasonably said to exceed policy limits, but the Plaintiffs refuse to release the insured, Zinn, in exchange for policy limits. (See Plaintiffs' Complaint, Paragraphs 13, 14 and 15).

This case was timely removed to federal court on the basis of diversity jurisdiction and is now before the Court on defendant's motion for partial summary judgment.

The issue presented for the Court's consideration is: Does a third party claimant have a valid bad faith claim against a tortfeasor's insurer, where the insurer has offered to pay policy limits in exchange for a release of its insured and the third party claimant refuses to release the insured from further liability? For the reasons set forth below, the Court **GRANTS** defendant's motion for partial summary judgment.

### B. Summary Judgment

Summary judgment is appropriate "if there is no genuine issue of material fact." *Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden does not require the moving party to show evidence that proves absence of a genuine issue of material fact, but only to point out its absence. *Id.*

The burden then shifts to the party opposing the motion. The adverse party may not rest upon mere allegations or denials, *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505, and summary judgment is appropriate if the adverse party fails to show, under Rule 56, the existence of an element essential to that party's case. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. A mere scintilla of evidence supporting the case is insufficient. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. With regard to the burden on the adverse party, Rule 56(e) provides in part that:

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

### C. Discussion

There are no genuine issues of material fact before the Court. The parties have stipulated to the facts as set forth in Allstate's motion for partial summary judgment. Plaintiffs' bad faith claim is based upon Allstate's refusal to tender policy limits in partial settlement of plaintiffs' claims against Zinn unless plaintiffs provide a full release of Allstate's insured, Zinn. No reply has been filed by Plaintiffs disputing the facts as set forth by Allstate.

In their complaint, Plaintiffs allege that Allstate's refusal to pay policy limits as partial settlement and its insistence on receiving a full release of its insured, Zinn, violates § 33–11–4(9) of the West Virginia Unfair Trade Practices Act, as well as other statutory, regulatory and common law authorities pertaining to bad faith and unfair claim settlement practices. Section 33–11–4(9) lists 15 prohibited unfair claim settlement practices, including "(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Although other subsections of § 33–11–4(9) may be applicable to third party claims, all published decisions of the Supreme Court of Appeals of West Virginia to date have dealt with sub-paragraph 9(f).

■ The Supreme Court of Appeals of West Virginia has recognized a private cause of action by third party claimants, pursuant to W.Va.Code § 33–11–4(9)(f), against insurance companies for unfair claims settlement practices. *See Jenkins v. J.C. Penney Cas. Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981) (holding that an implied cause of action exists under West Virginia Code § 33–11–4(9)), *overruled in part, State ex rel. State Farm v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994), and progeny.

Although the Supreme Court of Appeals has recognized a statutory cause of action for third party claimants, it has rejected third·party common law bad faith claims against a tort-feasor's insurer. "A third party has no cause of action against an insurance carrier for common law breach of the implied covenants of good faith and fair dealing or for common law breach of fiduciary duty." Syl.Pt., *Elmore v. State Farm Mut. Auto. Ins. Co.,* 202 W.Va. 430, 504 S.E.2d 893 (1998).

The Supreme Court of Appeals' recognition of a common law duty of good faith and fair dealing that runs from an insurer to its insured, in *Hayseeds, Inc. v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73 (1986), was based upon the contractual relationship that exists between an insurer and its insured. *Elmore,* 504 S.E.2d at 896–97. No such contractual relationship exists between an insurer and a third party claimant. In fact the relationship between an insurer and third party claimant is inherently adversarial. Accordingly, under current West Virginia law, Allstate is required to attempt to settle the plaintiffs' claims promptly, fairly, equitably and in good faith, given that liability has become reasonably clear. However, Allstate is not legally obligated to prefer the interests of the plaintiffs over those of its insured and, if Allstate was to do so, it would be exposed to a bad faith claim brought by its insured.

■ An insurer's failure to settle a claim within policy limits can give rise to a claim of bad faith. However, as noted in Syllabus Point 2 of *Shamblin v. Nationwide Mut.Ins.Co.,* 183 W.Va. 585, 396 S.E.2d 766 (W.Va.1990),

> [w]herever there is a failure on the part of an insurer to settle within the policy limits where there exists the opportunity to settle *and where such settlement within policy limits would release the insured from any and all personal liability,* the insurer has prima facie failed to act in its insured's best interest and such failure to settle prima facie constitutes bad faith towards to its insured.

(Emphasis added.) *Shamblin* does not impose a duty to settle for policy limits on an insurer where the claimant refuses to re-

lease the insured from personal liability, as in the case at bar. Given *Shamblin*'s mandate that an insurer accord the interest and rights of its insured at least as great a respect as its own, settlement for policy limits without securing a release of its insured from personal liability would subject an insurer to a bad faith claim brought by its insured. 396 S.E.2d at 768, Syl.Pt. 3.

While the precise issue presented in the case at bar has not been addressed by the West Virginia Supreme Court of Appeals, other courts considering this issue have held that requiring an insurer to settle a claim for policy limits, while leaving its insureds exposed to personal liability, presents an impossible Catch–22 for an insurer, exposing it to bad faith liability on either flank. In light of the conflicting duties owed by an insurer to its insureds and to third party claimants, courts have consistently held that an insurer's insistence on securing a release of its insureds before settling for policy limits does not constitute bad faith.

In *Strauss v. Farmers Ins. Exch.*, 26 Cal.App.4th 1017, 31 Cal.Rptr.2d 811 (1994), the appellate court confirmed the trial court's ruling that an insurer had no duty to settle where claimant sought policy limits in exchange for a release of only one insured, leaving the remaining insureds exposed to liability for a judgment that could exceed policy limits. The court noted that, if it agreed with the claimant that the insurer had acted in bad faith, "an insurer would be liable for either agreeing to or refusing to settle. This dilemma would discourage settlements and defy the reasonable expectations of the insureds." *Strauss* at 815. *See also State Farm Mut. Auto. Ins. Co. v. Crane*, 217 Cal.App.3d 1127, 266 Cal.Rptr. 422, 427 (1990) (noting that an insurer's unilateral payment to a claimant without obtaining a settlement and release, thereby "bankrolling" the injured party's continuing litigation against its insured, would constitute bad faith).

Similarly, in *Lehto v. Allstate Ins. Co.*, 31 Cal.App.4th 60, 36 Cal.Rptr.2d 814 (1995), the court held that an insurer's refusal to accept a settlement offer which would have released one of two insureds in exchange for full policy limits was not bad faith refusal to settle. The court concluded that the insurer's insistence on a release of both of its insureds did not constitute bad faith, observing that by offering policy limits in exchange for a release, the insurer has done all within its power to effect a settlement. *Lehto* at 820–21. The court commented that it knew "of no case permitting an insured, or his assignee or claimant, to sue for bad faith on the basis of the insurer's rejection of a settlement demand because it did not include a complete release of the insured." *Id.* at 821.

Whether an insurer violates Massachusetts' unfair settlement practices law, by insisting that a claimant against one of its insureds release all claims against its insured before paying a claim in which liability had become reasonable clear, was addressed in *Lazaris v. Metropolitan Prop. & Cas. Ins. Co.*, 428 Mass. 502, 703 N.E.2d 205 (1998). The court held that a claim is only "settled" under Massachusetts' law when it is fully disposed of, meaning that the claimant has released all claims against the insured. *Id.* at 206. The court recognized that if insurers were required to pay policy limits without a settlement of the claims against its insured, an insurance company would be subject to suit by either the claimant for its failure to pay, as well as the insured, disgruntled by the insurer's payment of the policy limit without first obtaining a release. *Id.* at 207. Where liability is reasonably clear but the damages exceed the policy limit, "the best that the insurance company can do in effectuating settlement is to offer policy limits in exchange for a release." *Id.*

The Supreme Court of Montana has also held that the refusal of a claimant to release an insured tort-feasor, in exchange for payment of policy limits, does not enable the claimant to recover from the in-

surer for failure to make a good-faith effort to settle. *Juedeman v. National Farmers Union Prop. & Cas. Co.*, 253 Mont. 278, 833 P.2d 191 (1992), *overruled on other grounds, Ridley v. Guaranty Nat. Ins. Co.*, 286 Mont. 325, 951 P.2d 987 (1997).

In the case at bar, Allstate has recognized that liability is reasonably clear and that plaintiffs' damages may exceed the limits of Zinn's insurance policy. Allstate has offered to pay the policy limits in exchange for a release of its insured, while preserving plaintiffs' rights to pursue underinsured motorist coverage, if any. To pay plaintiffs policy limits without securing a release for its insured would expose Allstate to a bad faith claim brought by Zinn. As noted by the court in *Lehto*, "bad faith refusal to accept a settlement offer cannot occur where 'acceptance' would itself be bad faith." *Lehto v. Allstate Ins. Co.*, 31 Cal.App.4th 60, 36 Cal.Rptr.2d 814, 822 (1994).

Under *Shamblin*, "it is the insurer's burden to act in good faith in actively seeking settlement and a release of its insured from personal liability." 396 S.E.2d at 777. Allstate must accord its insured's interests at least as much respect as its own. Because of the inherently adversarial relationship between an insurer and a third party claimant, the law does not expect Allstate to subordinate its interests, or those of Zinn, to those of the plaintiffs. *Elmore*, 504 S.E.2d at 899.

> The significant duty owed by an insurer to the insured certainly forecloses any like duty owed by the insurer to a third party who is an adversary of the insured. An insurer cannot logically owe a duty of good faith and fair dealing to the insured and a fiduciary duty to an adversarial third party in the same matter.

*Id.*

Therefore, Allstate's refusal to pay policy limits in the absence of a full release of its insured cannot form the basis for a third party bad faith claim.

### D. Conclusion

For the foregoing reasons, Allstate's motion for partial summary judgment (Docket No. 10) is **GRANTED** and Count II of the complaint is **DISMISSED WITH PREJUDICE.**

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record.